GARY CASTONGUAY *v.* COMMISSIONER
OF CORRECTION
(SC 18599)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued December 9, 2010—officially released April 19, 2011

*Damon A. R. Kirschbaum*, special public defender, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellee (respondent).

*Opinion*

ROGERS, C. J. The principal issue in this appeal is whether General Statutes § 53a-35b,[1] which defines a sentence of life imprisonment as a term of sixty years, is applicable in cases where the defendant committed the offense before July 1, 1981, the effective date of § 53a-35b, but the defendant was sentenced after that date. The petitioner, Gary Castonguay, was convicted, after a jury trial, of capital felony in violation of General Statutes (Rev. to 1977) §§ 53a-54a and 53a-54b, and felony murder in violation of General Statutes (Rev. to 1977) §§ 53a-54a and 53a-54c. He committed the offense on November 21, 1977, and ultimately was sentenced on December 19, 1989, to an indeterminate sentence of twenty-five years to life in prison pursuant to General

---

[1] General Statutes § 53a-35b provides in relevant part: "A sentence of imprisonment for life shall mean a definite sentence of sixty years . . . ." Section 53a-35b has been amended since the petitioner was sentenced for purposes not relevant to this appeal. For convenience, we refer to the current revision of the statute.

Statutes § 53a-35.[2] Thereafter, he filed a petition for writ of habeas corpus claiming that the respondent, the commissioner of correction, improperly had calculated his sentence as authorizing his confinement for the remainder of his natural life when § 53a-35b, which became effective as of July 1, 1981, defines life imprisonment as a definite sentence of sixty years. The habeas court concluded that § 53a-35b applies only to sentences for offenses that were committed after the effective date of the statute and, therefore, denied the petition. Thereafter, pursuant to General Statutes § 52-470 (b), the petitioner filed a petition for certification to appeal from the denial of his petition for a writ of habeas corpus, which the habeas court also denied. The petitioner then filed this appeal[3] claiming that the habeas court improperly denied his petition for writ of habeas corpus and his petition for certification to appeal from

[2] General Statutes § 53a-35 provides in relevant part: "(a) For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence . . . .

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment . . . ."

The respondent claims that the petitioner was sentenced pursuant to General Statutes (Rev. to 1977) § 53a-35, which was in place when the petitioner committed the offense and provides in relevant part: "(a) A sentence of imprisonment for a felony shall be an indeterminate sentence . . . .

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment . . . ."

The petitioner claims that the meaning of "life imprisonment" as used in General Statutes (Rev. to 1977) § 53a-35 (b) (1) changed when the sentencing scheme was revised in 1980, effective July 1, 1981, and that the trial court should have applied the revised definition. Because we conclude that the 1980 revisions did not change the meaning of "life imprisonment" as used in General Statutes (Rev. to 1977) § 53a-35 for sentences for any crimes committed before July 1, 1981, it is irrelevant which revision of the statute the trial court used in sentencing the petitioner. For convenience, we refer to the current revision of § 53a-35, unless otherwise noted.

[3] The petitioner appealed from the judgment of the habeas court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the denial of that petition. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, therefore, we dismiss the appeal.

To provide context for our discussion of the facts and procedural history of this case, we must set forth the legislative genealogy of the relevant statutes. Before July 1, 1981, all felonies, with limited exceptions, were punishable by an indeterminate sentence of imprisonment. See General Statutes (Rev. to 1981) § 53a-35. Under this scheme, the trial court was authorized "to set both the minimum and maximum portion of the sentence . . . [and] parole eligibility is established at the minimum less any good time used to reduce that minimum term." (Citations omitted.) *Williams* v. *Bronson*, 24 Conn. App. 612, 618, 590 A.2d 984, cert. denied, 219 Conn. 913, 593 A.2d 138 (1991). The maximum term for a class A felony was life imprisonment, which meant the prisoner's natural life. See General Statutes (Rev. to 1981) § 53a-35 (b); *Williams* v. *Bronson*, supra, 619 (for purposes of § 53a-35 [b], life imprisonment means natural life). In 1980, as part of the legislature's comprehensive revision of the state's sentencing structure abolishing indeterminate sentencing and creating definite sentencing, the legislature enacted No. 80-442 of the 1980 Public Acts (P.A. 80-442), which became effective July 1, 1981, and amended § 53a-35 to provide that § 53a-35 was applicable only to felonies committed before July 1, 1981. See P.A. 80-442, §§ 9 and 28, codified as part of General Statutes § 53a-35. The legislature also enacted new legislation; P.A. 80-442, §§ 10 and 28, codified at General Statutes § 53a-35a;[4] that provided that,

---

[4] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and . . . the term shall be fixed by the court as follows . . . (2) for the class A felony of murder, a term not less than twenty-five years nor more than life . . . ."

effective July 1, 1981, felonies committed on or after July 1, 1981, are punishable by a definite sentence. Under this scheme, sentencing courts were authorized "to impose a flat or exact term of years of imprisonment without a minimum or maximum [term] . . . ." *Williams* v. *Bronson*, supra, 618. For the crime of murder, the legislature provided that the sentence is a definite term of "not less than twenty-five years nor more than life . . . ." P.A. 80-442, § 10, codified at General Statutes § 53a-35a. The legislature also enacted new legislation; P.A. 80-442, § 11, codified at § 53a-35b; defining "imprisonment for life" as "a definite sentence of sixty years."

With this background in mind, we review the undisputed facts and procedural history of the present case. In 1980, the petitioner was convicted, after a jury trial, of capital felony and felony murder in connection with the shooting death of a police officer on November 21, 1977. The trial court originally imposed consecutive sentences of not less than twenty-five years to life on each charge for a total effective sentence of fifty years to life imprisonment. Upon the petitioner's motion to correct the illegal sentence, the trial court modified its judgment and sentenced the petitioner to a net effective sentence of twenty-five years to life. Thereafter, the petitioner appealed from the judgment of conviction to this court, and this court remanded the case to the trial court for a hearing on the question of whether the petitioner was entitled to a new trial because the jurors had been instructed that they could discuss the case among themselves before it was formally submitted to them for deliberation. *State* v. *Castonguay*, 194 Conn. 416, 436–37, 481 A.2d 56 (1984). After the hearing, a new trial was ordered and a jury again found the petitioner guilty of both charges. *State* v. *Castonguay*, 218 Conn. 486, 489, 590 A.2d 901 (1991). On August 25, 1988, the trial court sentenced the petitioner to two

consecutive sentences of twenty-five years to life. Thereafter, on December 19, 1989, pursuant to the petitioner's motion, the trial court vacated one of the sentences and sentenced the petitioner to an indeterminate sentence of twenty-five years to life pursuant to § 53a-35. The petitioner again appealed from the judgment of conviction to this court and this court affirmed the judgment of the trial court. Id., 512.

During his imprisonment, the petitioner earned jail credit, jail credit good time and statutory good time credit.[5] The respondent applied these credits to the minimum twenty-five year portion of the petitioner's sentence and, as a result, that portion of the sentence expired on May 24, 1987, and he became eligible for parole on that date.[6] The respondent determined, however, that the petitioner was not entitled to any credits against the maximum portion of the sentence because life imprisonment meant the petitioner's natural life. See *Williams* v. *Bronson*, supra, 24 Conn. App. 617–20 (credits for jail time and good time do not apply to maximum term of indeterminate sentence when maximum term is natural life imprisonment). Accordingly,

---

[5] The parties have not identified the specific statutes under which the petitioner earned these credits. Jail credit is credit for time spent in custody prior to sentencing. See General Statutes §§ 18-97, 18-98 and 18-98d. "[J]ail credit good time . . . is credit toward a reduction of an inmate's sentence that is earned for good behavior while the inmate is in custody prior to sentencing." *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 217 n.2, 756 A.2d 1264 (2000); see General Statutes § 18-98d (b). "[S]tatutory good time credit . . . is credit earned by a sentenced inmate for his or her good behavior." *Rivera* v. *Commissioner of Correction*, supra, 217 n.2; see General Statutes §§ 18-7 and 18-7a.

[6] The respondent stated in the return to the petition for a writ of habeas corpus that the petitioner's minimum sentence expired on May 24, 1987, and the habeas court accepted that date in its memorandum of decision. The respondent had submitted to the habeas court an affidavit by a records specialist employed by the department of correction, however, stating that the petitioner's sentence expired on July 23, 1987. The reason for this discrepancy is not clear from the record. Because it does not affect our analysis in this appeal, we need not resolve the discrepancy here.

that portion of the petitioner's sentence will never expire and he will be released from prison only if he is granted parole prior to his death pursuant to General Statutes § 54-125. If he is released on parole, the petitioner will remain under the supervision of the department of correction for the remainder of his natural life, unless his sentence is discharged by the board of parole pursuant to General Statutes § 54-129.

The petitioner filed a petition for writ of habeas corpus claiming that he was unlawfully confined because the maximum portion of his indeterminate sentence—life imprisonment—was a definite term of sixty years pursuant to § 53a-35b, and the respondent had unlawfully refused to apply the various credits against that term.[7] The habeas court denied the petition on the ground that, pursuant to this court's decision in *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 920 A.2d 301 (2007), § 53a-35b does not apply to life sentences that were imposed for offenses that were committed before July 1, 1981. The petitioner filed a petition for certification to appeal from the judgment of the habeas court, which the habeas court also denied. This appeal followed.

The petitioner claims that the habeas court improperly denied his petition for writ of habeas corpus and his petition for certification to appeal from that denial. Specifically, the petitioner claims that, because § 53a-35b plainly and unambiguously defines "imprisonment for life" as a term of sixty years, and because the terms of the statute do not limit its application to defendants who are sentenced on or after July 1, 1981, the statute

---

[7] See General Statutes § 18-7a (a) ("[i]n the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term"). Section 18-7a governs statutory good time credit, but the respondent does not dispute that the petitioner's jail credit and jail credit good time also would be credited to the maximum term of the petitioner's sentence if that sentence were calculated as sixty years.

applies "quasi-retroactively"[8] to the sentences of persons who committed the offense prior to that date but who are sentenced to an indeterminate sentence with a maximum term of life imprisonment after that date. He argues, therefore, that this court's holding in *Mead v. Commissioner of Correction*, supra, 282 Conn. 322, that § 53a-35b does not apply retroactively, was limited to cases in which the defendant was sentenced before July 1, 1981. The respondent contends that, to the contrary, this court's holding in *Mead* applies to *all* sentences for offenses committed before that date.

"We begin by setting forth the applicable standard of review and procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms v. Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), we concluded that . . . § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms v. Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), we incorporated the factors adopted by the United States Supreme Court in *Lozada v. Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

---

[8] See Black's Law Dictionary (9th Ed. 2009) (explaining in definition of retroactivity that "quasi-retroactivity . . . occurs when a new rule of law is applied to an act or transaction in the process of completion" [internal quotation marks omitted]).

. . . *Simms* v. *Warden,* supra, 230 Conn. 616. A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. Id." (Emphasis in original; internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction,* 299 Conn. 129, 135–36, 7 A.3d 911 (2010). "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." *Taylor* v. *Commissioner of Correction,* 284 Conn. 433, 449, 936 A.2d 611 (2007).

We turn therefore to the merits of the petitioner's claim. Whether § 53a-35b applies to the term "life imprisonment" as used in § 53a-35 (b) (1) for sentences imposed on or after July 1, 1981, is a question of statutory interpretation over which our review is plenary. See *State ex rel. Gregan* v. *Koczur,* 287 Conn. 145, 152, 947 A.2d 282 (2008). "In making such determinations, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[9] *Testa* v. *Geressy,* 286 Conn. 291, 308, 943 A.2d 1075 (2008) ([o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . .)." (Internal quotation marks omitted.) *In re Matthew F.,* 297 Conn. 673, 688, 4 A.3d 248 (2010).

Section 53a-35 (a) provides in relevant part that "[f]or any felony committed prior to July 1, 1981, the sentence

---

[9] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

of imprisonment shall be an indeterminate sentence
. . . ." Section 53a-35 (b) provides in relevant part that
"[t]he maximum term of an indeterminate sentence
shall be fixed by the court and specified in the sentence
as follows: (1) For a class A felony, life imprisonment
. . . ." Finally, § 53a-35b provides in relevant part that
"[a] sentence of imprisonment for life shall mean a
definite sentence of sixty years . . . ."

It is undisputed in the present case that, because the
petitioner committed the offense prior to July 1, 1981, he
was properly sentenced to an indeterminate sentence
pursuant to § 53a-35. The petitioner claims, however,
that, contrary to the trial court's ruling, § 53a-35b
applies not only to definite life sentences imposed pur-
suant to § 53a-35a for crimes committed on or after
July 1, 1981; see footnote 4 of this opinion; but also to
indeterminate sentences for offenses committed before
July 1, 1981, that are imposed pursuant to § 53a-35 (b)
(1) *after* the effective date of § 53a-35b. We conclude
that § 53a-35b does not apply to a life sentence imposed
pursuant to § 53a-35 (b) (1), regardless of when the
sentence was imposed, but applies solely to definite
life sentences imposed pursuant to § 53a-35a.

First, contrary to the petitioner's claim, it is clear
that our holding in *Mead* v. *Commissioner of Correc-
tion*, supra, 282 Conn. 322, that § 53a-35b is not retroac-
tive, applies not only to sentences that were imposed
pursuant to § 53a-35 (b) (1) before July 1, 1981, but also
to those imposed on or after that date. The petitioner
in *Mead* was convicted, after entering a guilty plea, of
three counts of murder. He committed the crimes on
August 12, 1970. Id., 318–19. He originally was sen-
tenced on April 11, 1972, pursuant to General Statutes
(Rev. to 1968) § 53-11, which provided that "[a]ny per-
son who commits murder in the second degree . . .
shall be imprisoned in the [s]tate [p]rison during his

life." *Mead* v. *Commissioner of Correction,* supra, 319 n.4.

In 1971, as part of the enactment of the Penal Code, the legislature repealed General Statutes (Rev. to 1968) § 53-11 and adopted the indeterminate sentencing scheme now codified at § 53a-35. Id., 319; Public Acts 1969, No. 828, §§ 35 and 214. That scheme became effective on October 1, 1971. Public Acts 1969, No. 828, § 215. In 1980, the legislature again revised the sentencing scheme, maintaining an indeterminate sentencing scheme for offenses committed prior to July 1, 1981, and creating a definite sentencing scheme for offenses committed on or after that date. P.A. 80-442, §§ 9 and 10. To conform to those revisions, the respondent in *Mead* recalculated the petitioner's sentence pursuant to § 53a-35 (b) (1) from a term of life imprisonment to an indeterminate sentence with a minimum term of twenty-five years and a maximum term of life, defined as natural life.[10] *Mead* v. *Commissioner of Correction,* supra, 282 Conn. 319–20.

The petitioner in *Mead* challenged the recalculation of his sentence on the alternate grounds that: (1) his life sentence should have been calculated as a term of sixty years pursuant to § 53a-35b; id., 320–21; or (2) he should not have been sentenced pursuant to the post-1980 sentencing scheme at all, but should have been sentenced pursuant to the sentencing scheme in place at the time that he committed the offense. Id., 326–27. This court rejected the petitioner's second claim on procedural grounds.[11] Id., 327–28.

[10] Our review of the habeas court's decision in *Mead* reveals that the court found that the commissioner of correction had calculated the petitioner's life sentence to conform to the sentencing scheme in place after the effective date of the 1980 revisions.

[11] Although we recognized that the petitioner's claim was supported by the case law, we rejected it because: (1) the petitioner had raised it for the first time in his supplemental brief; and (2) he had not explained how the respondent's recalculation of this sentence to conform to the 1980 revisions to the sentencing scheme could have harmed him, even if it was improper. *Mead* v. *Commissioner of Correction,* supra, 282 Conn. 327–28.

With respect to the petitioner's claim in *Mead* that § 53a-35b applied to his sentence, this court concluded that, because § 53a-35b was a substantive statute, it presumptively did not apply retroactively. Id., 324–25. This court further concluded that nothing in the language of § 53a-35b or the other statutes enacted as part of the 1980 revisions to the sentencing scheme suggested that the legislature intended that § 53a-35b would apply retroactively. Id., 325–26. Accordingly, this court concluded that § 53a-35b did not apply to the petitioner's sentence. Id., 326. As we have explained, the sentence at issue in *Mead* had been recalculated to conform to the statutory sentencing scheme in place *after* the effective date of § 53a-35b. Thus, our decision in *Mead* that § 53a-35b did not apply to the petitioner's sentence necessarily means that § 53a-35b does not apply to the phrase "life imprisonment" as used in § 53a-35 (b) (1), and that the phrase continued to mean natural life after the effective date of the 1980 revisions. Accordingly, "life imprisonment" means natural life for all felonies committed before July 1, 1981, regardless of the date of sentencing.[12]

[12] We recognize that this court summarized its holding in *Mead* by stating that § 53a-35b "does not apply retroactively to persons sentenced prior to its enactment." *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 322. We generally look to the date of the offense, however, and not to the date of the sentence, in determining whether a substantive statute is being applied retroactively. See *State* v. *Skakel*, 276 Conn. 633, 684 n.46, 888 A.2d 985 ("we generally look to the date of the offense in determining whether a change in the law is considered retroactive"), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). Moreover, we expressly stated in *Mead* that "[i]t is . . . reasonable to conclude that § 53a-35b applies only to post-1981 determinate sentencing." *Mead* v. *Commissioner of Correction*, supra, 325. Accordingly, it is clear—especially in light of the fact that the petitioner's sentence in *Mead* had been recalculated to conform to the 1980 revisions to the sentencing scheme—that our reference to "persons sentenced prior to [the effective date of § 53a-35b]"; id., 322; was a misstatement, and that we should have stated that § 53a-35b does not apply to the sentences of persons who committed offenses before that date.

To the extent that the petitioner claims that we should overrule our decision in *Mead* and hold that § 53a-35b applies to sentences imposed pursuant to § 53a-35 (b) (1) for offenses committed before July 1, 1981, we disagree. We continue to believe that, in accordance with the general common-law principles governing the retroactivity of substantive criminal statutes; see *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 323–25; the legislature intended to maintain in its entirety the preexisting indeterminate sentencing scheme for all crimes committed before the effective date of the 1980 revisions to the sentencing scheme. Moreover, as we stated in *Mead*, if "life imprisonment" as used in § 53a-35 (b) (1) means a definite sentence of sixty years for sentences for all crimes committed before July 1, 1981, then "every defendant sentenced to life imprisonment [for an offense committed] prior to [that date] would be entitled to have his life sentence recalculated as a term of sixty years." Id., 326. We continue to find it "improbable that the legislature intended to impose such a burden on our court system . . . ."[13] Id.

Our conclusion in *Mead* that § 53a-35b does not apply to life sentences imposed pursuant to § 53a-35 (b) (1) is bolstered by the language of the relevant statutes. Section 53a-35 (a) provides for *indeterminate* sentencing, in contrast to § 53a-35b, which defines "imprison-

---

[13] To the extent that the petitioner argues that we should partially overrule *Mead* and hold that § 53a-35b applies to sentences imposed pursuant to § 53a-35 (b) (1) on or after July 1, 1981, but not to sentences imposed before that date, we also disagree. As we state in the body of this opinion, we see no evidence that the legislature intended to change the substance of § 53a-35 when it enacted the 1980 revisions to the sentencing scheme. Nor do we see anything in the language of § 53a-35 that limits the application of § 53a-35 (b) (1) to sentences imposed on or after July 1, 1981. To the contrary, § 53a-35 (a) provides that the statute applies to sentences for "*any felony* committed prior to July 1, 1981 . . . ." (Emphasis added.) Thus, if § 53a-35b defined "life imprisonment" as a term of sixty years for sentences imposed on or after July 1, 1981, it would also define life imprisonment as a term of sixty years for sentences imposed before that date.

ment for life" as "a *definite sentence* of sixty years
. . . ." (Emphasis added.) It is reasonable to conclude
that the legislature used the term "definite sentence"
in § 53a-35b because it contemplated that the statute
would apply exclusively to definite sentences imposed
pursuant to § 53a-35a, and not to the maximum term
of an indeterminate sentence imposed pursuant to
§ 53a-35 (b) (1).

In addition, if the legislature had wanted to change
the meaning of "life imprisonment" for crimes commit-
ted before July 1, 1981, from natural life to a term of
sixty years when it revised the sentencing scheme in
1980, it easily could have made that intention clear by
expressly providing that "life imprisonment" as used in
§ 53a-35 (b) (1) is defined by § 53a-35b. The fact that
the only change that the legislature made to § 53a-35
when it enacted the 1980 revisions was to add the phrase
"[f]or any felony committed prior to July 1, 1981" to
subsection (a) supports the conclusion that the legisla-
ture had no intent to change the substance of the statute.
See P.A. 80-442, § 9.

The petitioner argues, however, that § 53a-35b should
apply retroactively because the statute is ameliorative.
See *In re Estrada*, 63 Cal. 2d 740, 745–46, 408 P.2d 948,
48 Cal. Rptr. 172 (1965) (when legislature has amended
statute to mitigate penalty for crime, new law applies
to cases in which defendant committed crime before
amendment, but was sentenced after amendment); *Peo-
ple* v. *Oliver*, 1 N.Y.2d 152, 160, 134 N.E.2d 197, 151
N.Y.S.2d 367 (1956) ("the law is settled that the lesser
penalty may be meted out in all cases decided after
the effective date of the enactment, even though the
underlying act may have been committed before that
date").[14] Specifically, the petitioner claims that the legis-

---

[14] This court has not previously held that ameliorative changes to criminal
statutes apply retroactively and we express no opinion on that question here.

lature was concerned that increasing the penalty for violent crimes would produce an unmanageable increase in the prison population, and the purpose of § 53a-35b was to alleviate this potential overcrowding by reducing the time that must be served by defendants who are sentenced to life imprisonment.[15] We disagree. As we have indicated, defendants who are sentenced

---

[15] The legislative history of the 1980 revisions to the sentencing scheme indicates that one of its primary purposes was to increase the amount of time that defendants who are convicted of murder would spend in prison. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1980 Sess., p. 1143, remarks of State's Attorney Donald Browne ("the citizens of our community are upset with the present minimum sentence for murder . . . and this bill would increase the minimum sentence available for the crime of murder from the present ten years up to twenty-five years"); id., p. 1160, remarks of Chief State's Attorney Austin McGuigan ("The [criminal justice] [d]ivision . . . supports an increase in the maximum penalty for murder from the present twenty-five years to life, with actual sentences being served in the neighborhood of thirteen years, to a minimum sentence of twenty-five years and a maximum sentence of sixty years or life. We believe that the present system we have for sentencing those convicted of murder does not create [a credible] deterrent or punishment for those convicted. A sentence of twenty-five years amounts to a sentence actually . . . in the neighborhood of thirteen years and this is simply insufficient."); 23 H.R. Proc., Pt. 14, 1980 Sess., p. 4346, remarks of Representative Richard Lawlor ("with regard to the murder provisions . . . the sentences [are] now a minimum of [ten] to [twenty-five] to life . . . [a]nd what we are doing is raising those minimums . . . in ordinary murder . . . to a minimum of [twenty-five] years to life"); id., p. 4348, remarks of Representative John A. Berman ("[W]hat I've heard in terms of a problem with our system is that people who commit murder, don't do a long enough time. And I happen to agree with that . . . ."); id., p. 4349 ("[A]t the present time for a class A felony, which is murder . . . the sentence is [ten] to [twenty-five]. And I can agree that that probably is too low. The average sentence is about [fourteen] years in Connecticut for taking a life. . . . So what this bill does is put a minimum which shall not be less than [twenty-five] years.").

The legislative history of the 1980 revisions also shows that there were concerns that increasing the penalty for violent crimes might cause a significant increase in the prison population. See, e.g., Conn. Joint Standing Committee Hearings, supra, pp. 1145–46, remarks of Browne. It is well established that "testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation." (Internal quotation marks omitted.) *Butts* v. *Bysiewicz*, 298 Conn. 665, 687, 5 A.3d 932 (2010).

to a maximum term of natural life pursuant to the indeterminate sentencing scheme become eligible for parole upon the expiration of the minimum term of the sentence less any applicable credits. Under the definite sentencing scheme, however, a sentence of life imprisonment does not have a minimum term of a definite number of years. Accordingly, if life imprisonment were defined as natural life under the definite sentencing scheme, a defendant who was sentenced to life imprisonment would never become eligible for release or parole because there would be no definite term of years against which to apply credits or to calculate parole eligibility.[16] Cf. *Williams* v. *Bronson*, supra, 24 Conn. App. 617–20 (credits for jail time and good time do not apply to maximum term of indeterminate sentence when maximum term is natural life imprisonment). Thus, defining life imprisonment as natural life would have a much harsher impact on defendants sentenced under the definite sentencing scheme than on defendants sentenced under the indeterminate sentencing scheme. It is reasonable to conclude that the legislature enacted § 53a-35b in order to avoid this unduly harsh result for defendants sentenced to life imprisonment pursuant to the definite sentencing scheme, not to mitigate the penalty for defendants sentenced pursuant to the indeterminate sentencing scheme. Moreover, the petitioner has pointed to no evidence that the purpose of § 53a-35b was to alleviate prison overcrowding or, indeed, that the legislature had reason to believe that the operation of the statute would have a significant

---

[16] Under the current parole statutes, for example, defendants convicted of murder are eligible for parole when they have "six months or less to the expiration of the maximum term or terms for which such person was sentenced," provided that the defendant has served 95 percent of the definite sentence imposed. General Statutes § 54-125g. If life imprisonment were defined as natural life, this statute could not be applied to that sentence because the sentence would not expire and it would be impossible to calculate 95 percent of it.

effect on prison population. Accordingly, we reject this claim.[17]

We conclude that the habeas court properly determined that § 53a-35b does not apply to life sentences imposed pursuant to § 53a-35 (b) (1) for felonies committed before July 1, 1981, regardless of when the sentence was imposed, but applies only to definite life sentences imposed pursuant to § 53a-35a for felonies committed on or after July 1, 1981. Accordingly, we conclude that the petitioner failed to establish that the issue he raised is debatable among jurists of reason, that a court could have resolved it in a different manner or that the question he raised is adequate to deserve encouragement to proceed further; see *Kaddah* v. *Commissioner of Correction*, supra, 299 Conn. 136; and, therefore, the habeas court did not abuse its discretion in denying his petition for certification to appeal from the denial of his petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[17] The petitioner also claims that § 53a-35b applies to sentences imposed pursuant to § 53a-35 (b) (1) on or after July 1, 1981, because: (1) General Statutes § 53a-2 provides that "[t]he provisions of [the Penal Code] shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires"; (2) § 53a-35b does not contain a savings provision providing that the statute does not apply to defendants sentenced on or after July 1, 1981; (3) §§ 53a-35 and 53a-35a contain provisions that limit their application to defendants sentenced, respectively, before and after July 1, 1981, while § 53a-35b does not; and (4) it is ambiguous whether § 53a-35b applies to sentences imposed on or after July 1, 1981, and, therefore, the rule of lenity applies and § 53a-35b must be construed strictly against the state. For the reasons stated in this opinion, we do not find these claims persuasive.