******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH COTE
(SC 19053)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Vertefeuille, Js.

*Argued March 27—officially released November 25, 2014*

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, was *Peter A. McShane*, state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Joseph Cote, appeals from the judgment of the Appellate Court affirming the judgment of conviction, rendered after a jury trial, of one count of burglary in the third degree in violation of General Statutes § 53a-103 (a)[1] and one count of larceny in the second degree in violation of General Statutes (Rev. to 2009) § 53a-123 (a).[2] The defendant claims that Public Acts 2009, No. 09-138, § 2 (P.A. 09-138),[3] which amended the second degree larceny statute after the defendant committed the crime but before his conviction by increasing the value of property stolen necessary to constitute the offense, applied retroactively. The defendant also claims that, if certain uncharged misconduct evidence concerning his activities in another location was admissible, any probative value of the evidence was greatly outweighed by its prejudicial effect, and, therefore, admission of the evidence was harmful error. We affirm the judgment of the Appellate Court.

The following relevant facts, which the jury reasonably could have found, are set forth in the Appellate Court's opinion. "At approximately 10 a.m., on January 27, 2009, Judith Stanton left her home located at 677 Pequot Trail in [the town of] Stonington (Stonington property). When Stanton returned to her home at approximately noon, she realized that the telephone was no longer on the wall, the liquor cabinet was open and drawers had been opened in every room upstairs. Her jewelry box had been 'torn apart,' and pocket watches that were on display in a cabinet were missing. Jewelry, several $2 bills, a federal note and six $100 bills were [also] missing from the property.

"Lucinda Wesson, a neighbor who lived directly across the street from the Stonington property, noticed a car she did not recognize parked on her street the morning of January 27, 2009. It was a dark-colored Saab convertible with . . . Massachusetts license plate[s]. At that time, no one was in or near the car. Sometime later, Wesson went to the other side of her home, where she again saw the car because it was stationed outside her property. At this time, the passenger's side door was open, and a man was wandering in the middle of the street, appearing as if he were looking for something. The person driving the car said, '[g]et back into the car,' and the parties then left. Both of the individuals had a 'very thick Massachusetts accent.' From her standpoint in her home, she believed the individual outside of the vehicle was approximately six feet tall, and she apprised police that he was of Italian descent, with black hair, between forty and fifty years old, weighing approximately 200 pounds and wearing a red sweatshirt type jacket.

"An investigation at the Stonington property revealed

that force had been used to open the rear door. An area of weather stripping that ran down the exterior of the door had been manipulated or moved. The damage was consistent with forced entry into the house. There were footprints in the snow outside the Stonington property that ran from the front of the home to the back door; however, the police were not able to get foot impressions. The Stonington police filed a report with the National Crime Information Center detailing the incident.

"On January 27, 2009, at approximately 1:45 p.m., Raymond Driscoll, the police chief in Richmond, Rhode Island, drove past the home of an acquaintance located on 122 Kingston Road in Richmond. The homeowner's truck was not on the property; however, there was a black Saab convertible with Massachusetts license plates parked in the yard. Driscoll observed two men standing in front of the garage door looking into the garage through a window. He then observed one of the men looking through a door at the front step next to the garage. This man was 'alternately looking over his shoulder between looking into the house.' One of the men noticed that Driscoll was watching, and both men quickly walked to the Saab and drove away.

"Driscoll followed the vehicle, which entered an abandoned gasoline station parking lot. While Driscoll was calling for additional police support, the operator of the vehicle got out of the car and walked over to him. Driscoll asked the operator for his license and registration, which he retrieved. The license identified the operator of the vehicle as the defendant, and his passenger was identified as [Albert] Kalil. The defendant volunteered that he and Kalil were on their way from a casino and had gotten lost. The defendant stated that they had stopped at the house to ask for directions and that they were running out of gasoline. Driscoll asked the defendant to turn the vehicle on, and Driscoll observed that the vehicle had more than one quarter of a tank of gasoline remaining.

"Kalil was wearing a 'sweatshirt type jacket' and had a pair of bloodstained white athletic socks in his jacket pockets. There was also a cut on Kalil's hand. When asked why he had socks in his jacket pocket, Kalil responded that he had 'bad feet.' Kalil stated that he and the defendant had been at [a] casino and that he had won $100. When asked why he was at the property located at 122 Kingston Road, Kalil stated that he and the defendant were lost and running out of gasoline and had stopped to ask for directions. When asked how they could be running out of gasoline when there were four gasoline stations within one and one-quarter miles of where they were located, Kalil responded that he did not know. When asked why they chose 122 Kingston Road to stop and ask for directions when there were no cars in the driveway, Kalil responded that he did

not know.

"After obtaining the defendant's consent, Driscoll searched the vehicle, finding some articles of clothing in the backseat, a pair of black gloves on the center console and a screwdriver, pry bar and a hatchet/hammer in the trunk. When the additional police support arrived, Driscoll went back to the house and noticed two sets of footprints in the snow leading from the front of the home to the back of the home and back to the front. He could see where an individual had stopped on the back step and presumably looked into the house through the back door. There did not appear to be any entry into the house.

"Driscoll placed Kalil in the backseat of an officer's cruiser and asked the defendant to follow him to the police station. Driscoll drove into the parking area behind the station, and the defendant drove to the front of the station. After parking, Driscoll went to the front of the police station, and the defendant 'was standing on the sidewalk in front of the Saab . . . right in front of a row of small shrubbery that's in front of the police station.' Driscoll again obtained consent to search the defendant's vehicle, and he seized the hatchet/hammer, screwdriver and pry bar. When looking through the interior of the vehicle, the police seized a costume jewelry gemstone. The gemstone was approximately one-quarter inch by one-quarter inch in size and blue or green in color. It was found between the driver's seat and the passenger's seat in the Saab.

"The Richmond police later recovered a bag in the bushes in front of the Saab parked in the police department parking lot. Inside the bag were various types of jewelry, including pocket watches, rings and bracelets. The bag contained approximately fifty pieces of jewelry. The bag also had a piece of jewelry with gemstones that matched the gemstone found inside the vehicle.

"The Stonington police were notified that the Richmond [P]olice [D]epartment had found individuals and goods that were consistent with the Stonington burglary. Stanton viewed the jewelry obtained by the Richmond [P]olice [D]epartment and identified it as her property. The defendant and Kalil thereafter were arrested by the Stonington police and charged with burglary in the third degree and larceny in the second degree.

"The jury found the defendant guilty of [the offenses charged]. The defendant was sentenced on August 5, 2010, to six years imprisonment on the larceny count and five years on the burglary count, to be served concurrently, for a total effective sentence of six years." (Footnotes omitted.) *State* v. *Cote*, 136 Conn. App. 427, 429–33, 46 A.3d 256 (2012).

The defendant appealed from the judgment of conviction to the Appellate Court,[4] which rejected his claim

that P.A. 09-138, § 2, which amended the second degree larceny statute by increasing the value of property stolen necessary to constitute the offense, applied retroactively.[5] Id., 441. We then granted the defendant's petition for certification to appeal from the Appellate Court's judgment.[6] *State* v. *Cote*, 307 Conn. 922, 55 A.3d 567 (2012). We also granted the defendant's subsequent motion for permission to add a second certified issue, namely, whether "the Appellate Court properly affirm[ed] the trial court's decision admitting the testimony of a Rhode Island police officer on grounds that the evidence was admissible for proof of intent and to 'complete the story of the charged crime' and that [its] prejudicial effect did not outweigh [its] probative value?" *State* v. *Cote*, 308 Conn. 913, 61 A.3d 1100 (2013). We conclude that P.A. 09-138, § 2, did not apply retroactively. We also reject the defendant's evidentiary claim and, therefore, affirm the judgment of the Appellate Court.

I

The defendant first claims that the Appellate Court improperly concluded that P.A. 09-138, § 2, did not apply retroactively because it is a curative act intended to remedy a defect in an existing statute,[7] or, in the alternative, because it is an ameliorative provision intended to correct nearly three decades of legislative inaction.[8] The state responds that the defendant's claim that P.A. 09-138, § 2, is a curative act is not properly before this court and that adoption of the amelioration doctrine would impermissibly invade the province of the legislature. We agree with the state.

The following additional facts are relevant to our resolution of this claim. In his brief to the Appellate Court, the defendant articulated the first issue as whether the trial court improperly declined to apply P.A. 09-138, § 2, retroactively to reduce the sentence in his case in light of its ameliorative provisions.[9] See *State* v. *Cote*, Conn. Appellate Court Records & Briefs, March Term, 2012, Defendant's Brief p. 5. In his reply brief, however, the defendant additionally claimed that the trial court should have applied P.A. 09-138, § 2, retroactively because it is a curative act. See id., Defendant's Reply Brief p. 10. As a consequence, the state contended during oral argument before the Appellate Court that the defendant's assertion that P.A. 09-138, § 2, is a curative act was an entirely new claim that the defendant had raised improperly for the first time in his reply brief. The Appellate Court agreed and declined to address that claim. *State* v. *Cote*, supra, 136 Conn. App. 436 n.11. The Appellate Court cited the well established principle that "[o]ur practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that [the court] can have the full benefit of that written argument. Although the function of the

appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) Id., quoting *Grimm* v. *Grimm*, 276 Conn. 377, 394 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

The defendant nonetheless raised the issue again in his petition for certification to appeal. In the first question presented for review, the defendant asked this court to consider whether P.A. 09-138, § 2, is an ameliorative act that should be applied retroactively. The defendant specifically asked: "Did the Appellate Court err by refusing to reconsider the so-called 'amelioration doctrine' whereby changes to statutes reducing their penalties apply retroactively to those not yet sentenced, especially since [this] court has stated it is an open question under Connecticut law?" In the second question presented for review, the defendant asked the court to consider whether the act is curative, making specific reference to the fact that he had used the term "curative" for the first time in his reply brief to the Appellate Court. The defendant specifically asked: "Did the Appellate Court err by refusing to review the defendant's claim that [P.A. 09-138 is] a curative statute, and thus meant to apply backwards in recognition of the law being defectively stated previously, because he first used the term curative in his reply brief, but after he had stated in his initial brief with supporting argument that the history of [P.A. 09-138] shows it was meant to remedy dollar values in the larceny statutes having been unintentionally lowered by [twenty-seven] years of inflation?" (Internal quotation marks omitted.) Thereafter, we did not grant certification on the second question but, rather, limited certification to the following question: "Did the Appellate Court properly determine that [P.A. 09-138] did not apply retroactively?" *State* v. *Cote*, supra, 307 Conn. 922.

Although the certified question is phrased more concisely than either of the first two questions presented by the defendant, there can be no doubt that the certified question is based on the defendant's first question referring to the amelioration doctrine because it was the only issue with respect to the retroactive application of P.A. 09-138, § 2, that the Appellate Court decided. The Appellate Court did not consider whether P.A. 09-138, § 2, is a curative act because the issue had not been timely raised, a fact that the defendant recognized when he asked in his second question: "Did the Appellate Court err *by refusing to review* the defendant's claim that [P.A. 09-138 is] a curative statute  . . .  ?" (Emphasis added; internal quotation marks omitted.) Thus, because the question on which we granted certification asks if the Appellate Court properly "determine[d]" that P.A. 09-138, § 2, did not apply retroactively; *State* v. *Cote*, supra, 307 Conn. 922; and, in view

of our refusal to grant certification on the issue of whether the Appellate Court improperly declined to review his claim that P.A. 09-138, § 2, applied retroactively because it is a curative act, we will not review that claim because it is beyond the scope of the certified question.[10]

We further conclude, on the basis of our reasoning in *Kalil*, the companion case in which we addressed the amelioration doctrine at length in response to all of the same arguments the defendant makes in the present case; see *State* v. *Kalil*, 314 Conn.    ,    , A.3d    (2014); that the Appellate Court properly determined that P.A. 09-138, § 2, was not intended to be an ameliorative act that applied retroactively. Accordingly, the defendant's claim regarding the retroactive application of P.A. 09-138, § 2, has no merit.

II

The defendant next claims that, if the uncharged misconduct evidence of his alleged Rhode Island activities was admissible, its probative value was greatly outweighed by its prejudicial effect, and, therefore, admission of the evidence was harmful error. The state argues that the evidence was admissible to prove the defendant's intent to commit the crimes with which he was charged and that its probative value outweighed its prejudicial effect. We agree with the state.

The following additional facts are relevant to our resolution of this claim and are set forth in the Appellate Court's opinion in *State* v. *Kalil*, 136 Conn. App. 454, 46 A.3d 272 (2012). "Prior to trial, defense counsel filed a motion in limine to bar Driscoll's testimony about any observations that he made prior to stopping [Kalil and] the defendant . . . in Rhode Island on January 27, 2009. Counsel argued that allowing Driscoll to testify as to the nature of the incident he observed would be extremely prejudicial to the defendant, as the defendant was not charged for that incident, and it was separate from the charges in Connecticut. The state, in turn, argued that the testimony would complete the story of the Stonington burglary and demonstrate the defendant's intent to commit [that] burglary. The court determined that the testimony was admissible to complete the story . . . [and also] was relevant to the defendant's intent. The court therefore denied the motion in limine.

"After Driscoll testified as to his observations of the defendant prior to stopping the Saab, the court gave a limiting instruction . . . directing the jury to consider such testimony only if it determined that the conduct occurred and that it supported the issue of intent or completing the story.[11] Similarly, during its charge to the jury after closing arguments, the court again instructed the jury that it could consider this portion of Driscoll's testimony only if it concluded that it dem-

onstrated the defendant's intent during the Stonington burglary or if it completed the story of the Stonington burglary."[12] (Citation omitted; footnote altered.) Id., 461–62.

As previously discussed, although the defendant and Kalil were tried together, they filed separate appeals with the Appellate Court, which affirmed the trial court's judgments in their respective cases. Id., 483; *State* v. *Cote*, supra, 136 Conn. App. 453. Both the defendant and Kalil then appealed to this court. The defendant did not claim initially that admission of the other misconduct evidence was improper.[13] Kalil, however, had made such a claim, and, following its rejection by the Appellate Court, he renewed the claim on appeal to this court. Thereafter, we granted the defendant's motion seeking permission to add the claim of whether the Appellate Court properly determined that the trial court did not abuse its discretion in admitting evidence of other misconduct by the defendant in Rhode Island.

We conclude, on the basis of our reasoning in *Kalil*, in which we addressed the same issue and responded to all of the same arguments made by the defendant in the present case; see *State* v. *Kalil*, supra, 314 Conn.    ; that the probative value of the evidence of the defendant's misconduct in Rhode Island outweighed its prejudicial effect. Accordingly, the defendant's claim has no merit.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, McDON-ALD, ESPINOSA and VERTEFEUILLE, Js., concurred.

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes (Rev. to 2009) § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property . . . exceeds five thousand dollars . . . ."

[3] Section 2 of P.A. 09-138, entitled "An Act concerning Larceny," increased the value required for an offense constituting larceny in the second degree as follows: "(a) A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ." P.A. 09-138, § 2, codified at General Statutes (Supp. 2010) § 53a-123 (a) (2). Thus, under the statutory scheme at the time of the defendant's conviction, the value of the property taken would have qualified for a charge of larceny in the third degree; see General Statutes (Supp. 2010) § 53a-124 (a) (2); a class D felony with a maximum sentence of five years; see General Statutes (Supp. 2010) § 53a-124 (c); General Statutes § 53a-35a (8); rather than a class C felony with a maximum sentence of ten years under the statute in effect at the time the crime was committed. See General Statutes (Rev. to 2009) § 53a-123 (c); General Statutes § 53a-35a (7).

[4] The defendant and Kalil were tried together but filed separate appeals with the Appellate Court.

[5] The defendant's other two claims were that "there was insufficient evidence to warrant the conviction of [third degree] burglary and . . . the trial court erred in not granting the defendant's renewed motion to sever the trials of the defendant and . . . Kalil." *State* v. *Cote*, supra, 136 Conn. App. 429.

[6] Our granting of the defendant's petition for certification to appeal from the judgment of the Appellate Court was limited to the following issue: "Did the Appellate Court properly determine that [P.A. 09-138] did not apply retroactively?" *State* v. *Cote*, 307 Conn. 922, 55 A.3d 567 (2012).

[7] "A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities. In the absence of such an act the statute would be void for want of conformity with existing legal requirements." 2 N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2009) § 41:11, p. 503. Thus, statutory amendments that cure defects in their provisions are applied retroactively.

[8] "The amelioration doctrine provides that amendments to statutes that lessen their penalties are applied retroactively . . . . *State* v. *Graham*, 56 Conn. App. 507, 511, 743 A.2d 1158 (2000); see also *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 663, 16 A.3d 676 (2011) (when [the] [l]egislature has amended [a] statute to mitigate [the] penalty for a crime, [the] new law applies to cases in which [the] defendant committed [the] crime before [the] amendment, but was sentenced after [the] amendment), citing *In re Estrada*, 63 Cal. 2d 740, 745–46, 408 P.2d 948, 48 Cal. Rptr. 172 (1965)." (Internal quotation marks omitted.) *State* v. *Kalil*, 314 Conn.     , , A.3d     (2014).

[9] The defendant's first argument was entitled: "The General Assembly by [P.A.] 09-138 increased the dollar value threshold differentiating larceny second degree from larceny third degree and the trial court erred by refusing to apply the ameliorative change to the defendant's case." *State* v. *Cote*, Conn. Appellate Court Records & Briefs, March Term, 2012, Defendant's Brief p. 5.

[10] Our decision not to review this claim applies to the defendant's related arguments under article first, § 9, of the Connecticut constitution, which provides in relevant part that "[n]o person shall be . . . punished, except in cases clearly warranted by law," because his arguments are premised on the notion that the legislature believed that an amendment to the larceny statute was necessary because the statute was defective.

[11] "The court [gave] the following . . . limiting instruction: The evidence offered by the state of alleged subsequent acts of misconduct by the [defendant] at [the Rhode Island property] is not being admitted to prove the bad character of . . . the [defendant] or . . . the defendant's tendency to commit a criminal act. This evidence is being admitted to show or establish the existence of . . . the defendant's intent on the charges of burglary and/or larceny, which is a necessary element of each of those crimes.

"It is also being offered to place in . . . context the events alleged to have occurred on the date in question. You may not consider such evidence as establishing a predisposition on the part of [the] defendant to commit the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you conclude that such conduct occurred and further find that it logically, rationally, and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of intent or placing the events of the date in context.

"On the other hand, if you do not conclude that such conduct occurred, or, even if you do, if you find that it didn't logically, rationally, and conclusively assist on the issue of . . . intent or placing into context the alleged events that occurred on the date in question, you may not consider the testimony for any purpose . . . ." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 136 Conn. App. 462 n.7.

[12] "The court . . . [charged the jury after closing arguments as follows]: Any testimony or evidence which I identified as being limited to a purpose, you will consider only as it relates to the limits for which it was allowed, and you will not consider such testimony and evidence in finding any other facts as to any other issue.

"For example, the state offered evidence of the alleged act by . . . the [defendant], which occurred shortly after the act alleged to have occurred at the [Stonington property] . . . . The evidence offered by the state of subsequent acts of alleged misconduct by the [defendant] at or near [the Rhode Island property] was not admitted to prove the bad character of . . . the [defendant] or . . . the defendant's tendency to commit criminal acts. This evidence was admitted solely to show or establish the existence of . . . the defendant's intent on the charges contained in [the] information of burglary and/or larceny, which is a necessary element of each of these crimes. It was also offered to place into context . . . the events alleged to have occurred on the date in question.

"You may not consider such evidence as establishing a predisposition on the part of [the] defendant to commit the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you conclude that such conduct occurred and further find that it logically, rationally, and

conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of intent or placing the events of the date . . . into context.

"On the other hand, if you do not conclude that such conduct occurred, or, even if you do, if you find that it doesn't logically, rationally, and conclusively assist on the issue of intent or placing into context the events alleged to have occurred on the date in question, you may not consider this testimony for any purpose." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 136 Conn. 462–63 n.8.

[13] The defendant raised three claims in the Appellate Court. The claims were: (1) P.A. 09-138, § 2, applied retroactively to his case; (2) there was insufficient evidence to sustain his burglary conviction; and (3) the trial court improperly denied the defendant's motion to sever the trials of the defendant and Kalil. *State* v. *Cote*, supra, 136 Conn. App. 429.

————————————————————