******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# DEREK MAIA *v.* COMMISSIONER OF CORRECTION
## (SC 20786)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

The petitioner, who had been convicted of murder and sentenced to sixty years of incarceration, the maximum sentence for that crime, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel, M, had rendered ineffective assistance of counsel by failing to advise the petitioner to accept the trial court's plea offer of forty-five years of incarceration in exchange for his guilty plea. At the petitioner's habeas trial, M testified that he believed that he had advised the petitioner, in light of the plea offer, about the strength of the state's case, the weaknesses of his defenses, statements from witnesses on which the state was going to rely at trial, the elements of the charged crime, the petitioner's chances of succeeding at trial and his sentencing exposure if he were to proceed to trial. M also testified that he would have told the petitioner that his chances of succeeding at trial were not good given M's evaluation of the evidence. In addition, M testified that he never advised clients to accept or reject a plea offer but allowed them to decide for themselves. On the other hand, the petitioner testified at the habeas trial that M had informed him of the forty-five year offer but never advised him that it was in his best interest to accept the offer. The petitioner claimed that he would have accepted the offer had M advised him to do so. The habeas court granted the habeas petition, concluding that, although M had adequately advised the petitioner about the strength of the state's case, the weaknesses of his case, his chances of succeeding at trial, and his sentencing exposure, M's performance was deficient and the petitioner was prejudiced thereby because M had failed to advise the petitioner to accept the court's plea offer and, if he had done so, the petitioner would have accepted the offer. The court reasoned that it was very unlikely that the petitioner would have prevailed at trial and that the forty-five year offer was the only meaningful opportunity for him to receive a sentence that was less than the maximum of sixty years. The habeas court thereafter denied the petition of the respondent, the Commissioner of Correction, for certification to appeal, and the respondent appealed.

*Held* that the habeas court abused its discretion in denying the respondent's petition for certification to appeal, the habeas court having incorrectly concluded that M had rendered deficient performance by failing to advise the petitioner to accept the forty-five year plea offer:

This court concluded that there is no per se requirement that defense counsel recommend whether a defendant should accept a plea offer, and the need to provide a specific recommendation in any particular case depends on a number of factors, including the defendant's chances of prevailing at trial, the disparity between the sentence proposed in the plea offer and the likely sentence that would be imposed if the defendant were found guilty after a trial, whether the defendant has maintained his innocence, and the defendant's comprehension of the various considerations that will inform his plea decision.

Moreover, prior Appellate Court cases led this court to conclude that defense counsel not only must explain to the defendant the strengths and weaknesses of the state's case, the charges he is facing, and the maximum sentence to which he would be exposed if he were unsuccessful at trial, but also advise on how those strengths and weaknesses relate to the state's likelihood of prevailing at trial and on the challenges the defendant would face in putting on his own defense.

The range of circumstances a particular defendant might face, including, for example, a defendant's health, the effects of incarceration or a trial on family members, or the defendant's assertion of his innocence, also informs defense counsel's decision whether to recommend that a defen-

dant accept a plea offer.

In the present case, the habeas court found that M had effectively communicated to the petitioner the strengths and weaknesses of the state's case, the evidence on which the state was going to rely, the elements of the charged crime, the petitioner's chances of succeeding at trial, and his sentencing exposure, and this guidance provided the petitioner with sufficient information to make a reasonably informed decision about whether to accept the plea offer.

Furthermore, the habeas court erred when it relied solely on the fact that the forty-five year plea offer was the only meaningful opportunity for the petitioner to receive a sentence less than the maximum sentence in concluding that M's representation was ineffective.

In addition, consideration of the factors for determining whether defense counsel should recommend that the defendant accept a plea offer led this court to conclude that it would not have been unreasonable for M not to have provided the petitioner with a specific recommendation and, accordingly, M's representation of the petitioner was not deficient.

This court overruled the Appellate Court's decision in *Sanders* v. *Commissioner of Correction* (169 Conn. App. 813) to the extent that the Appellate Court determined in that case that trial counsel's performance was deficient because, among other things, counsel failed to provide the petitioner with an opinion as to what plea to enter.

Argued March 23—officially released August 8, 2023

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Parkinson, J.*; judgment granting the petition; thereafter, the court denied the petition for certification to appeal, and the respondent appealed. *Reversed*; *judgment directed*.

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, was *Marc Ramia*, senior assistant state's attorney, for the appellant (respondent).

*Kayla R. Stephen*, with whom was *Alice Osedach Powers*, for the appellee (petitioner).

*Opinion*

D'AURIA, J. In this certified appeal, we consider whether trial counsel for the petitioner, Derek Maia, rendered ineffective assistance when he failed to recommend that the petitioner accept the court's pretrial plea offer of a forty-five year sentence of incarceration, considering that the court sentenced him to sixty years after trial. We disagree with the habeas court's determination that counsel's lack of a specific recommendation amounted to deficient performance pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As a result, we reverse the habeas court's judgment and remand the case to that court with direction to deny the petitioner's petition for a writ of habeas corpus.

As reported in the Appellate Court's opinion in *State* v. *Maia*, 48 Conn. App. 677, 678–80, 712 A.2d 956, cert. denied, 245 Conn. 918, 717 A.2d 236 (1998), affirming the trial court's judgment of conviction, the jury in the petitioner's underlying criminal case reasonably could have found the following facts. In October, 1993, "a community newspaper association known as Da Ghetto held a [fundraising] Halloween party at the Casa Mia restaurant in Waterbury." Id., 678. Guests paid an admission price to attend the party. Id. "The [petitioner] arrived [at the event] between 11 and 11:30 p.m. Upon his arrival, the [petitioner] complained about having to wait outside for a long time before he was admitted inside. The party had been planned to continue until 2 a.m. . . . At some point, however, Mark Yates, the senior editor of Da Ghetto, announced that the party was ending early because of 'inappropriate conduct.' . . .

"The [petitioner] angrily confronted Yates about ending the party early and demanded his money back. . . . The [petitioner] then had an altercation with Leroy Flint, an employee of Casa Mia and the boyfriend of the restaurant owner, Delores Trudeau, and had further altercations with his brother and his cousin when they tried to calm him, and with Yates' brother. The [petitioner], who was described as acting 'like a typhoon,' pushed and shoved anyone who was in his path. Trudeau overheard the [petitioner] state that 'someone was going to stop breathing.' The [petitioner] eventually left Casa Mia with his friend, Brian Brown. The [petitioner] and Brown drove to the house where Brown's girlfriend lived. Once there, Brown went inside and the [petitioner] waited in the car. After about five minutes, Brown returned and gave the [petitioner] a bag containing a gun. The [petitioner] and Brown then proceeded back to Casa Mia.

"At approximately 1 a.m. . . . Martin Hayre, Michael Millhouse and the victim, Christopher Love, were leaving Casa Mia together. Hayre and the victim walked out

of Casa Mia and waited on the curb for Millhouse to come with his car. When Millhouse pulled his car up, the victim opened the front passenger door and Hayre opened the right rear door. As they were getting into the car, the [petitioner] approached, said something to the victim and then shot the victim in the face. The victim died of a gunshot wound to the head.

"At trial, the [petitioner] admitted that he was responsible for the victim's death. He testified, however, that he did not intend to take the victim's life. The [petitioner] testified that he had been drinking and had smoked marijuana that night. He testified that he did not leave the gun in the car when he and Brown returned to Casa Mia because he had been in previous arguments at the bar and had been jumped by several people. He testified that he approached the victim and wanted to talk to him about the way the party was ended. At that time, the gun was in the [petitioner's] shirt pocket, with the handle hanging out. The [petitioner] testified that he heard footsteps behind him and that as he was going to turn around, he was 'yanked from the back by [the] hood.' His arm then went up and the gun went off. The [petitioner] was convicted of murder and sentenced to a term of sixty years [of] imprisonment." (Footnotes omitted.) Id., 678–80. The petitioner appealed to the Appellate Court, which upheld the trial court's judgment of conviction. See id., 690.

The petitioner later filed this habeas action and, in his second amended petition, alleged that his trial counsel, Attorney Alan McWhirter, had rendered ineffective assistance by "fail[ing] to adequately advise the petitioner of the strength of the state's case and the weakness of the petitioner's possible defenses" and "fail[ing] to adequately advise the petitioner to accept a plea offer."[1] The petitioner argued that McWhirter provided ineffective assistance because, when he presented the court's plea offer of forty-five years to the petitioner, McWhirter did not advise him to accept this offer, notwithstanding that the petitioner faced the possibility of sixty years in prison.

Despite concluding that McWhirter had adequately advised the petitioner of the strengths and weaknesses of the state's case, the habeas court ruled in the petitioner's favor, finding that "McWhirter rendered deficient performance by not recommending to [the petitioner] that he accept the court indicated offer of forty-five years." The habeas court further concluded that the petitioner was prejudiced because it was reasonably probable that, without McWhirter's deficient performance, the petitioner would have accepted the plea offer and that the trial judge would have accepted the plea agreement.

The habeas court found the following additional facts that are relevant to this appeal. McWhirter had been a public defender for eighteen years prior to the petition-

er's jury trial. He had been trial counsel in many criminal cases, including one dozen or more murder trials. McWhirter began representing the petitioner the night that the petitioner turned himself in to the police. He began preparing for trial the moment representation started. This preparation included using the petitioner's probable cause hearing to discover relevant information and to question witnesses in advance of trial, using investigators to produce evidence to counter the state's evidence and support his client's defenses, and receiving and reviewing all discovery from the state. McWhirter also explored the possibility of resolving the case via plea discussions.

In McWhirter's opinion, the state's case against the petitioner was very strong and would be very difficult to defend. He testified that the state was very forthcoming in the discovery process, which he took as a sign that the state was confident in its case. McWhirter's defense strategy was to negate the intent element of murder, resulting in a conviction of the lesser included offense of manslaughter in the first degree. McWhirter intended to show that the petitioner accidentally shot the victim after someone jumped on his back. Other than the petitioner's own testimony, the only evidence to support this theory was the statement of Clyde Wilkins. Wilkins told the petitioner's private investigator that the petitioner had shot the victim after he was accosted from behind by Hayre. Critically, Wilkins' statement contradicted Hayre's statement. Hayre told the police that the petitioner had walked up to the victim, took out a gun, put it to the victim's head and fired one gunshot at close range. Hayre stated that the "scuffle" between himself and the petitioner occurred after the petitioner shot the victim. McWhirter testified that a potential weakness in the state's case was that the eyewitnesses testifying against the petitioner, including Hayre, were the victim's friends, which the defense could use to show bias. According to McWhirter, the petitioner did not disagree with the defense strategy. McWhirter anticipated that the state would argue that, because the petitioner had left Casa Mia and returned with a gun, he intended to shoot and kill the victim. He did not expect the jury to consider the petitioner's leaving and returning with a gun in a good light.

About two months after the petitioner's arrest, the state offered him a sentence of sixty years of incarceration in exchange for a guilty plea to the charge of murder. McWhirter communicated this offer to the petitioner and discussed it with him. As this offer presented no tangible benefit—it was the maximum charge and maximum sentence—the petitioner did not accept it. After the initial offer, McWhirter discussed the possibility of a plea agreement with the state, but the state made no further offer.

Almost two years after the initial plea offer, during

a judicial pretrial, the court presented a plea agreement offering a sentence of forty-five years in exchange for a guilty plea to the charge of murder. McWhirter communicated the court's offer to the petitioner but could not recall their specific discussion about it. McWhirter testified, however, that his normal practice was to explain to clients that, if they did not accept a plea offer, the court would withdraw it and not make it available again. According to McWhirter, he never advised clients to accept or not to accept a plea offer. It was his practice to allow his clients to come to that decision independently without a specific recommendation. He testified that, in his opinion, only a client can make the decision about whether to accept a plea offer. McWhirter could not recall if the petitioner ever advised him that he did not want to proceed to trial. Importantly, McWhirter testified that he believed that, as was his normal practice, he had advised the petitioner on the strength of the state's case, the weaknesses of his defenses, the witness statements the state relied on, the elements of the charges, the petitioner's chances at trial, and his sentencing exposure going to trial. He also testified that he would have told the petitioner that the chance he would prevail at trial was not good given McWhirter's evaluation of the evidence and what evidence he anticipated the state would present at trial.

In contrast, the petitioner testified that McWhirter informed him of the court's offer but did not advise him about the strengths of the state's case or the weaknesses of his potential defenses.[2] The petitioner testified that he was uncertain whether McWhirter was going to argue at trial that he acted in self-defense or that the shooting was unintentional. The petitioner maintained that, if McWhirter had advised him that claiming self-defense was untenable, he would have accepted the plea offer and pleaded guilty. The petitioner also testified that, during jury selection, he asked McWhirter if he could personally speak with the state's attorney to negotiate a plea deal, but McWhirter said it was too late. The petitioner denied that McWhirter informed him that the court's offer would be withdrawn if he did not accept it and that it was unlikely that he would receive another offer.[3] The petitioner indicated that McWhirter never advised him that it was in his best interest to accept a plea offer, but that, if he had, he would have accepted the court's offer.

The habeas court did not find the petitioner's testimony regarding McWhirter's alleged failures as defense counsel credible, instead crediting McWhirter's testimony. In particular, the habeas court concluded that McWhirter did not fail to adequately advise the petitioner about the strengths of the state's case, the weaknesses of his defense, the petitioner's chances at trial and sentencing exposure going to trial. However, the habeas court concluded that McWhirter's failure to advise the petitioner to accept the court's plea offer

constituted deficient performance. The court noted that the petitioner's chances of prevailing at trial were very unlikely and that the court's offer of forty-five years was the "only meaningful opportunity for [the petitioner] to receive a sentence less than the maximum sentence [of sixty years] for murder." The court reasoned that these considerations, coupled with the court's finding that the petitioner never maintained his innocence but claimed only that he lacked the requisite intent to commit murder, supported the conclusion that McWhirter's failure to advise the petitioner to accept the court's offer amounted to deficient performance. The habeas court concluded that this deficient performance prejudiced the petitioner because the court credited the petitioner's testimony that he would have accepted the trial court's offer had McWhirter recommended it.

The respondent, the Commissioner of Correction, then petitioned for certification to appeal to the Appellate Court, which the habeas court denied. The respondent then appealed to the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-2.

"Faced with the habeas court's denial of [a petition for] certification to appeal, [an appellant's] first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . If the [appellant] succeeds in surmounting that hurdle, the [appellant] must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citations omitted.) *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). To show that a court abused its discretion in denying certification to appeal, an appellant must "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis omitted; internal quotation marks omitted.) *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 657, 16 A.3d 676 (2011).

Necessarily, therefore, the respondent first claims that the habeas court abused its discretion in denying his petition for certification to appeal because the issue of whether and when counsel must provide a specific recommendation as to a plea offer is not settled law. The respondent argues that the habeas court's resolution of the petitioner's claim of ineffectiveness based on trial counsel's failure to advise him to accept the court's plea deal is debatable among reasonable jurists. The petitioner counters that the issue of when counsel is obligated to recommend that a client accept a plea offer is settled law in Connecticut. In particular, the petitioner argues, and the respondent agrees, that each case requires a fact specific analysis, as there is no "bright-line" rule that counsel must make a recommendation in every case. According to the petitioner, because

the habeas court properly analyzed the facts, the issue in this case is not debatable among jurists of reason.

"In determining whether the habeas court abused its discretion in denying the petitioner's petition for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 626, 212 A.3d 678 (2019). We therefore turn to the merits of the respondent's claim, which is governed by our well established jurisprudence regarding ineffective assistance of counsel: The sixth and fourteenth amendments to the United States constitution guarantee criminal defendants the right to the effective assistance of counsel for their defense in state prosecutions. *Strickland* v. *Washington*, supra, 466 U.S. 685–86; *Helmedach* v. *Commissioner of Correction*, 329 Conn. 726, 732–33, 189 A.3d 1173 (2018). A defendant seeking habeas relief for ineffective representation must prove two elements. "First, the defendant must show that counsel's performance was deficient. This requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment. Second, the defendant must show that the deficient performance prejudiced the defense."[4] (Internal quotation marks omitted.) *Williams* v. *Taylor*, 529 U.S. 362, 390, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), quoting *Strickland* v. *Washington*, supra, 687.

In reviewing ineffective assistance claims, "we are mindful that [t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 666–67, 159 A.3d 1112 (2017).

The respondent claims that the habeas court improperly found McWhirter's representation deficient solely because he did not specifically recommend to the petitioner that he should accept the court's plea offer.[5] The respondent first argues that binding case law did not require McWhirter to directly advise the petitioner to accept the court's plea offer. Rather, he asserts that prior case law supports a conclusion that McWhirter's performance was not deficient in the present case. Second, the respondent argues that the habeas court's holding is out of line with federal precedent regarding whether trial counsel is required to provide a specific recommendation as to whether to accept a plea deal. Finally, the respondent argues that whether to recommend that a client accept a plea offer should be left to counsel's

" 'wide discretion . . . .' " He specifically contends that trial counsel should be hesitant to make recommendations because only a criminal defendant can measure and account for certain factors that might necessarily impact his decision of whether to accept a plea offer, including health and family concerns, his relationships with others, and his prior experiences with prison life, including his belief in his ability to adapt to it. Additionally, the respondent asserts that trial counsel is in a "far better position than a reviewing court, twenty-five years later, to gauge firsthand exactly the type of advice that [the] client was seeking and otherwise needed" when advising a client on a plea offer.

The petitioner responds that the habeas court correctly concluded that he was denied the effective assistance of counsel because his attorney did not specifically recommend whether he should accept the court's offer of forty-five years. He argues that Appellate Court case law indicates that professional advice and assistance concerning a plea offer, *as well as* trial counsel's evaluation of the plea, are necessary to render competent performance. He argues that McWhirter should have "given the petitioner his advice as to the best course of action since the petitioner was not likely to prevail at trial . . . there was a likelihood of disparity in sentencing after a full trial compared to the offer, the petitioner did not maintain his innocence and the petitioner's level of comprehension of pertinent factors." We agree with the respondent that McWhirter's performance was not deficient in the present case.

A defendant's right to effective representation applies to all " 'critical stages' " of a criminal prosecution, including any plea negotiations. *Helmedach* v. *Commissioner of Correction*, supra, 329 Conn. 733, quoting *Missouri* v. *Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). "In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 338 Conn. 330, 340, 258 A.3d 40 (2021). "Precisely defining counsel's duties during plea negotiations is, however, a difficult task"; *Helmedach* v. *Commissioner of Correction*, supra, 734; because "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland* v. *Washington*, supra, 466 U.S. 688. Counsel performs effectively and reasonably when he provides a client with adequate information and advice on which the client can make an informed decision as to whether to accept the state's plea offer. See *Melendez* v. *Commissioner of Correction*, 151 Conn. App. 351, 359, 95 A.3d 551, cert. denied, 314 Conn. 914, 100 A.3d 405 (2014).

There is no per se requirement that defense counsel must recommend whether a client should accept a plea

offer. See *Moore* v. *Commissioner of Correction*, supra, 338 Conn. 341 n.6 (clarifying that appellate case law "require[s] counsel to provide advice on plea offers, but [does] not mandate that counsel make specific recommendations in all circumstances"). This is because providing a specific recommendation implicates two critical and sometimes conflicting rights: "On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." (Citations omitted; internal quotation marks omitted.) *Purdy* v. *United States*, 208 F.3d 41, 44 (2d Cir. 2000). The need to provide a specific recommendation in any particular case depends on a number of factors, including "the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." Id., 45; see also *Moore* v. *Commissioner of Correction*, supra, 338 Conn. 343 (adopting factors set forth in *Purdy*). Thus, "whether an attorney's performance fell below an objective standard of reasonableness" by failing to provide a specific recommendation requires a case-by-case, fact specific analysis. (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, supra, 341–42. Although this court has not yet considered whether trial counsel performs deficiently by failing to recommend that a client accept a plea offer, the Appellate Court has addressed this issue several times. A review of this case law, and a resolution of its inconsistencies, is beneficial for our analysis in the present case.

In *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011), after a jury found the petitioner guilty of assault in the first degree, the trial court sentenced him to a term of sixteen years of incarceration, execution suspended after eight years. Id., 427. The petitioner filed a habeas action on the ground that his trial counsel had provided ineffective assistance by failing to adequately counsel him regarding the advisability of accepting the state's plea offer of ten years of incarceration, execution suspended after four years. Id., 425–26. The habeas court denied the petitioner's habeas petition. Id., 427. On appeal, the Appellate Court held that trial counsel's failure to recommend that the

petitioner accept the plea offer did not constitute deficient performance under *Strickland*. See id., 439–40. Specifically, the Appellate Court upheld the habeas court's finding that counsel had "fully advised the petitioner concerning the state's plea offer . . . ." Id., 439. The court noted that, although counsel believed that the petitioner had a viable self-defense claim, which they communicated to the petitioner, and that defense proved unsuccessful, counsel performed adequately by fully informing the petitioner of the risks associated with trial, "the charges against him . . . the merits of the state's case and the petitioner's claim of self-defense, including the fact that the jury had to believe that the petitioner's use of force was not excessive and was reasonable under the circumstances." Id., 436. The court also emphasized that the petitioner consistently had maintained his innocence and was adamant that he wanted to go to trial because he believed that had a viable self-defense claim. Id., 439. Under these circumstances, the court in *Vazquez* determined that the lack of a specific recommendation to take the plea offer was not constitutionally ineffective assistance of counsel. Id.

In *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 93 A.3d 165 (2014), the Appellate Court again addressed whether trial counsel rendered constitutionally deficient performance by failing to "give the petitioner her professional advice and assistance concerning, and her evaluation of, the court's [pretrial] plea offer." Id., 802. Counsel testified that it was her practice to refrain from giving advice on plea offers to protect herself from habeas and grievance actions in which clients could claim that they were coerced into pleading guilty. Id., 788. The habeas court found that trial counsel had informed the petitioner about the offer but had not given him any advice on the offer. Id., 795–96. The habeas court went on to conclude that counsel had not rendered constitutionally deficient performance, however, as she had "fully apprised the petitioner as to the terms of the plea offer . . . the strengths and weaknesses of the prosecution and defense cases, and the possible outcomes after trial." (Internal quotation marks omitted.) Id., 795. The habeas court also noted that conviction in that case was not a foregone conclusion because the petitioner's guilt hinged on the believability of coconspirator and circumstantial evidence. Id. As a result, the habeas court concluded that defense counsel had not performed deficiently by not recommending that the petitioner accept the plea offer. See id.

On appeal, the Appellate Court in *Barlow* agreed with the habeas court that, under the circumstances of that case, counsel had no obligation to recommend that the petitioner accept the court's plea offer. Id., 796. However, the court held that counsel had "an obligation to provide advice and assistance to the petitioner regarding that plea offer, [which she] admittedly failed

to do." Id., 796–97. The court noted that the petitioner's trial counsel had testified that she refrained from giving the petitioner *any advice* as to the plea offer but that she "merely gave [the petitioner] the facts of the offer," which the Appellate Court interpreted to mean that she provided "no assistance or advice as [the petitioner] weighed his options." Id., 801.[6] Because of this, the Appellate Court concluded that trial counsel's performance was deficient. See id., 796–97. The court emphasized that, although the decision to accept or reject a plea offer must ultimately be made by the defendant, this decision "should be made . . . with the adequate professional assistance, advice, and input of his . . . counsel." (Emphasis omitted.) Id., 800.[7]

The year after deciding *Barlow*, the Appellate Court decided *Andrews* v. *Commissioner of Correction*, 155 Conn. App. 548, 110 A.3d 489, cert. denied, 316 Conn. 911, 112 A.3d 174 (2015). After rejecting a plea offer of twenty years of incarceration, execution suspended after twelve years, the petitioner in *Andrews* was convicted of assault of a peace officer, attempt to commit assault in the first degree, attempt to commit assault of a peace officer, and possession of a sawed-off shotgun. Id., 550. The court sentenced him to a total effective term of forty years of imprisonment. Id. Upholding the habeas court's denial of the petitioner's petition for a writ of habeas corpus, the Appellate Court distinguished the facts of *Barlow*, explaining that, "[u]nlike trial counsel in *Barlow*, *who provided no advice or assistance to her client on the plea offer*, trial counsel in [*Andrews*] explained to the petitioner the strengths and weaknesses of the state's case, the charges he was facing, and the maximum sentence he would be exposed to if he was unsuccessful at trial. Trial counsel explained that the petitioner would likely receive a significantly higher sentence than twelve years if he was convicted at trial, that he believed that the state had a strong case against the petitioner, and that it would be a difficult case to win because most of the witnesses were police officers . . . one [of whom] had sustained permanent serious injury. Although trial counsel left the ultimate decision of whether to accept or to reject the offer to the petitioner, he provided the petitioner with adequate professional advice on [his] options and the best course of action . . . *given the facts of the case and the petitioner's potential total sentence exposure*." (Emphasis added.) Id., 554–55. The court held that counsel's assistance was not ineffective despite counsel's failure to specifically recommend that the petitioner accept the plea offer. Id.

The facts in *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017), differed only somewhat from those in *Andrews*, but, in *Sanders*, the differences compelled the opposite conclusion. The petitioner in *Sanders* was charged with two counts of assault in

the first degree and with being a persistent dangerous felony offender. Id., 815. The charges stemmed from an incident in which the petitioner had shot the victim multiple times in the presence of the victim's girlfriend. Id. Both the victim and his girlfriend identified the petitioner as the shooter. Id., 815–16. The state offered the petitioner eight years of incarceration in exchange for a guilty plea, which he declined. Id., 816. Like McWhirter in the present case, and trial counsel in *Barlow*, trial counsel in *Sanders* testified that his general practice was to "[present] his clients with the positive [and] the negatives of going to trial—the risks of trial [and] the maximum exposure," but that he does not specifically recommend that a client accept or reject a plea offer. (Internal quotation marks omitted.) Id., 817. The petitioner was convicted on all charges, and the court imposed a sentence of forty years of imprisonment. Id., 816. The habeas court found that counsel "did in fact adequately explain the pretrial offer, discuss the case, discuss the maximum punishments, discuss the pros and cons of pleading guilty or not guilty, but left, as he should have, the final decision as to whether to accept or reject such offer to [the petitioner]." (Internal quotation marks omitted.) Id., 819. Despite these findings, the Appellate Court held that "advising the petitioner on the strengths and weaknesses of his case, alerting him to his potential exposure and explaining to him the terms of the plea offer is insufficient . . . ." Id., 831. The court distinguished its holding in *Andrews*, reasoning that, unlike counsel in *Andrews*, counsel in *Sanders* had not provided the petitioner with his opinion as to whether the state would prevail at trial; id., 833; or his "professional advice as to the best course of action . . . ." Id., 831. Although the court concluded that trial counsel's performance was deficient, it ultimately ruled against the petitioner, as he had failed to prove that he was prejudiced by counsel's deficient performance. Id., 838.

Fulfilling counsel's constitutional duty to provide sufficient advice while not overstepping and potentially coercing a client can be a fine line to walk. Ultimately, we conclude that the Appellate Court's conclusion in *Sanders* concerning the effectiveness of counsel's assistance falls on the wrong side of the line, and we must overrule it. Although the court recognized that there is no per se rule obligating counsel to provide *recommendations* regarding plea offers, it interpreted *Barlow* to establish "an obligation for defense counsel to provide professional advice, assistance *and an 'informed opinion as to what pleas* [*to*] *enter'* and to make 'an informed evaluation of the options and *determine which alternative will offer the* [*petitioner*] *the most favorable outcome*.' " (Emphasis added.) Id., 832, quoting *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 798. In our view, requiring that counsel provide an "opinion" as to what plea to enter cannot be distinguished from

requiring counsel to provide a specific recommendation to either accept or reject a particular plea offer. Neither is required in every case for counsel to have rendered constitutionally effective assistance, as "[t]here is no per se rule requiring specific conduct of defense attorneys during plea negotiations." *Moore* v. *Commissioner of Correction*, supra, 338 Conn. 341. The approach taken by the court in *Sanders* is not consistent with the approach *Strickland* and the cases that have followed it have directed, which is to consider counsel's performance "in light of all the circumstances"; *Strickland* v. *Washington*, supra, 466 U.S. 690; see also *Jordan* v. *Commissioner of Correction*, 341 Conn. 279, 287, 267 A.3d 120 (2021); and is at odds with the fundamental governing principles that this court has established, namely, that "[t]he parameters of appropriate advice required during plea negotiations are determined by a fact specific inquiry in which we consider whether an attorney's performance fell below 'an objective standard of reasonableness.'" *Moore* v. *Commissioner of Correction*, supra, 338 Conn. 341–42.

Most recently, in *Carrasquillo* v. *Commissioner of Correction*, 206 Conn. App. 195, 259 A.3d 1182, cert. denied, 339 Conn. 907, 260 A.3d 1227 (2021), the Appellate Court reiterated that "there is no requirement that counsel specifically recommend that [a defendant] accept a plea offer." Id., 209, citing *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 794–95. After rejecting a plea offer of twenty-five years of incarceration—the mandatory minimum sentence for the crime of murder—the petitioner in *Carrasquillo* was found guilty of murder and carrying a pistol without a permit and sentenced to thirty-five years of incarceration. *Carrasquillo* v. *Commissioner of Correction*, supra, 196–97. The petitioner filed a petition for a writ of habeas corpus, claiming in relevant part that trial counsel had failed to "explain the strength of the state's case against him, advise him of the maximum possible sentence for murder, or make a recommendation as to whether he should accept the proposed plea bargain." Id., 208. The habeas court disagreed with the petitioner, concluding that trial counsel had not rendered deficient performance after the court found that she "had extensive discussions with the petitioner about the strengths and weaknesses of the case, expressed her belief as to the likelihood of success after trial and told him that, in the end, it was his choice to make." (Internal quotation marks omitted.) Id., 202, 209. The court also found that there was evidence to suggest that counsel had, in fact, recommended that the petitioner plead guilty. Id. The Appellate Court upheld the habeas court's judgment, holding that "counsel's duty is to provide an informed opinion regarding the plea offer under the circumstances of the case," which does not always require a recommendation to accept a plea offer. Id., 209. Because the petitioner had failed to demonstrate that

counsel's advice fell below an objective standard of reasonableness, her performance was not deficient. Id., 207–208.

This case law informs our conclusion that counsel must not only explain to the defendant the strengths and weaknesses of the state's case, the charges he is facing, and the maximum sentence he would be exposed to if he were unsuccessful at trial, he also must advise his client on how those strengths and weaknesses relate to the state's likelihood of prevailing at trial and on the challenges a defendant would face in putting on his own defense. See *Andrews* v. *Commissioner of Correction*, supra, 155 Conn. App. 554–55. This is because "[a] defendant relies heavily [on] counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." (Emphasis omitted; internal quotation marks omitted.) *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 572, 992 A.2d 1200 (2010), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). "Instead of failing to meet a prescribed, mechanical standard, counsel's performance has been held to be constitutionally deficient when counsel failed to provide his client with sufficient information about the client's sentencing exposure to allow the client to make a reasonably informed decision [regarding] whether to accept a plea offer." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, supra, 338 Conn. 343. Although trial counsel must leave the ultimate decision of whether to accept or to reject a plea offer to a defendant—and must avoid coercing the defendant into taking a particular plea—he must also provide the petitioner with adequate professional advice on his options.

This standard is consistent with the standard federal courts apply. Under federal precedent, an attorney's performance is deficient if the attorney communicates a plea offer to a client but fails to render " 'professional advice' " or guidance. *Purdy* v. *United States*, supra, 208 F.3d 44, 47. This advice includes "communicat[ing] to the defendant the terms of the plea offer . . . and . . . usually inform[ing] the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . ." (Citations omitted.) Id., 45; see *Barnes* v. *United States*, Docket Nos. 13 Civ. 1226 (SAS) and 09 CR 1053 (SAS) 2013 WL 3357925, *7 (S.D.N.Y. July 2, 2013) (counsel provided effective assistance by explaining risks of trial and benefits of plea and by advising petitioner of potential sentencing exposure).

Federal courts also have found an attorney's performance constitutionally deficient when the attorney communicates a plea offer to a client, discusses the strengths and weaknesses of the state's case and the

defense but fails to recommend whether to accept the offer when the state has a virtually unassailable case and the offer is for significantly less prison time than the maximum possible sentence. See, e.g., *Boria* v. *Keane*, 99 F.3d 492, 494, 497 (2d Cir. 1996) (attorney rendered constitutionally deficient performance by failing to recommend that petitioner accept proffered plea bargain of one to three years, when attorney felt it would be "suicidal" to go to trial, and court ultimately sentenced petitioner to twenty years to life), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997); *Carrion* v. *Smith*, 644 F. Supp. 2d 452, 455, 469 (S.D.N.Y. 2009) (counsel provided ineffective assistance when he conceded that acquittal would be "virtually impossible" on charge that carried a mandatory minimum sentence of fifteen years to life, and state offered plea of ten years to life, when defendant was ultimately sentenced to 125 years to life), aff'd, 365 Fed. Appx. 278 (2d Cir. 2010). It would be unreasonable for counsel to fail to recommend that a client accept a plea offer if, after considering the circumstances of the case, he believes that a conviction is virtually inevitable and the attendant sentence will likely substantially exceed the pending offer. However, in most cases, the difference between a plea offer and a defendant's sentencing exposure is only one factor that trial counsel should consider when evaluating whether to advise a client to accept a plea offer.

The range of circumstances a particular defendant might face also informs defense counsel's representation, as "[d]efense counsel is in a much better position [than a trial judge] to ascertain the personal circumstances of his client so as to determine what indirect consequences the guilty plea may trigger." *Michel* v. *United States*, 507 F.2d 461, 466 (2d Cir. 1974); see also *McCoy* v. *Louisiana*,     U.S.     , 138 S. Ct. 1500, 1508, 200 L. Ed. 2d 821 (2018) (counsel and client "may not share" same objectives: counsel may consider avoiding harshest sentence paramount whereas client may "wish to avoid, above all else, the opprobrium that comes with admitting" guilt). For example, when deciding whether to recommend that a defendant accept a plea offer, defense counsel might have to consider whether the defendant's health affects his desire to accept an offer. See, e.g., *Moore* v. *Commissioner of Correction*, 186 Conn. App. 254, 267 n.8, 199 A.3d 594 (2018) (petitioner believed offered plea was "too high given his poor health, especially 'for someone who might not make it' "), aff'd, 338 Conn. 330, 258 A.3d 40 (2021). The effects of incarceration or trial on family members might also impact whether defense counsel should advise a defendant to accept a plea offer. See, e.g., *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 670, 289 A.3d 1206 (2023) (petitioner pleaded guilty in part because he "did not want to put his family through a trial"), petition for cert. filed (Conn. March

3, 2023) (No. 220295). Additionally, whether a defendant maintains his innocence will also affect whether counsel should recommend that he accept a plea offer. *Purdy* v. *United States*, supra, 208 F.3d 45; *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 439. In addition to all of these considerations, it is of paramount importance that defense counsel does not coerce a client into accepting a plea offer the client would otherwise not have accepted. *Purdy* v. *United States*, supra, 45.

Applying this standard to the present case, we first observe that the habeas court found that McWhirter had effectively communicated to the petitioner the strengths and weaknesses of the state's case, the witness statements the state relied on, the elements of the charges, the petitioner's chances at trial, and his sentencing exposure going to trial. This guidance provided the petitioner with sufficient information to make a reasonably informed decision about whether to accept the court's plea offer of forty-five years. The sole basis for the habeas court's conclusion that McWhirter provided ineffective assistance is that he did not advise the petitioner to accept the court's plea offer. The habeas court concluded that the petitioner's chances of prevailing at trial were "very unlikely," as the state's evidence was strong, and the state's confidence in its case was reflected in its own plea offer of sixty years—the maximum sentence. Despite crediting McWhirter's testimony that he informed the petitioner that he was unlikely to prevail at trial, the habeas court concluded that McWhirter's failure to specifically recommend that the petitioner accept the offer of forty-five years constituted deficient performance because "[t]he court indicated offer of forty-five years was the only meaningful opportunity for [the petitioner] to receive a sentence less than the maximum . . . ." The habeas court erred in relying on this fact alone to conclude that McWhirter's representation was constitutionally ineffective. A reviewing court must remember that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland* v. *Washington*, supra, 466 U.S. 688–89.

The present case aligns most closely with *Andrews* v. *Commissioner of Correction*, supra, 155 Conn. App. 548. In *Andrews*, trial counsel "provided the petitioner with adequate professional advice on [his] options and the best course of action"; id., 555; by "explain[ing] that the petitioner would likely receive a significantly higher sentence than twelve years if he was convicted at trial, that [trial counsel] believed that the state had a strong case against the petitioner, and that it would be a difficult case to win because most of the witnesses were police officers, and one of the police officers had sustained permanent serious injury." Id., 554–55. Trial

counsel in *Andrews* did not make a specific recommendation regarding the plea offer. Id. McWhirter provided the petitioner with similar advice in the present case.[8]

From our review of the habeas court's findings, which credited McWhirter's testimony regarding his trial preparation, it is clear that, if McWhirter had considered the factors discussed in *Purdy*, it would not have been unreasonable for him not to provide the petitioner with a specific recommendation. Therefore, under the circumstances, McWhirter's representation of the petitioner did not fall below the minimum required for constitutionally effective representation. Despite our holding today that McWhirter did not perform deficiently, we caution attorneys against adopting a practice, similar to McWhirter's, in which they never advise a client to accept a plea offer. As is clear from our case law, as well as federal precedent, counsel must weigh a number of factors in determining whether to recommend that a client accept a plea offer, as there will be cases when counsel will have rendered ineffective assistance by not providing a specific opinion as to whether the client should accept the offer. See *Moore* v. *Commissioner of Correction,* supra, 338 Conn. 341 n.6; see also *Purdy* v. *United* States, supra, 208 F.3d 44–45.

The judgment is reversed and the case is remanded with direction to deny the petition for a writ of habeas corpus.

In this opinion the other justices concurred.

[1] The petition also alleged that McWhirter had rendered ineffective assistance by failing to "conduct an adequate factual investigation into the facts of the case"; "adequately research the legal issues"; "adequately engage in plea negotiations"; and "adequately pursue a plea offer . . . ." Because the petitioner presented no evidence regarding these claims, the habeas court considered them abandoned, and none is at issue in this appeal.

[2] The petitioner testified that McWhirter did not advise him as to why self-defense was a weak claim given the facts of the case. The petitioner also testified that McWhirter never advised him about the number of witness statements supporting the state's position, that Wilkins' statement was the only evidence supporting the petitioner's rendition of the events or that the jury might view his leaving the restaurant to obtain a weapon and then returning in an unfavorable light.

[3] The petitioner's uncle was an inspector in the Waterbury state's attorney's office, which the petitioner thought would result in a favorable plea deal. The habeas court concluded that "[t]he connection between [the petitioner] and his uncle, although it led to him turning himself in on the warrant, also embodied the potential of the state's having an inflexible approach to ward off claims of favoritism toward [the petitioner]." The habeas court made no finding that McWhirter was aware of the petitioner's hope that he would receive a favorable outcome because of his uncle's position in the prosecutor's office.

[4] To satisfy the prejudice prong of the *Strickland* test when counsel's advice has led to the rejection of a plea offer, the petitioner must establish that "(1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction,* 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron,* 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). Because we conclude that trial counsel's performance was not deficient, we do not address *Strickland*'s prejudice prong.

[5] The respondent also claims on appeal that the habeas court "erred in

concluding that plea counsel, when advising a client in 1993, was constitutionally required to expressly advise his client whether to accept or reject a plea offer'' because it was not settled law at the time—or now—that counsel had to provide a particular recommendation to function as sixth amendment "counsel" during plea negotiations. (Internal quotation marks omitted.) Because we reverse the habeas court's judgment on the respondent's first claim, we do not address the merits of this second claim.

[6] The Appellate Court pointed to a line of questioning during which trial counsel testified that she had advised the petitioner about the specifics of the plea offer—fifteen years, execution suspended after nine years—but did not encourage him to accept the plea offer. *See Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 801 n.13. The Appellate Court interpreted this as counsel's not having provided "the petitioner [with any] professional assessment of the court's [pretrial] offer of nine years to serve in the context of the facts underlying the charges against him and his potential total sentence exposure." Id., 802.

[7] This court recently upheld the Appellate Court's holding that the petitioner in *Barlow* was prejudiced by his counsel's ineffective assistance, thus satisfying the second prong of *Strickland*. See *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 360, 273 A.3d 680 (2022). We did not address whether the Appellate Court correctly determined that counsel was ineffective, as that issue was not raised on appeal to this court. Id., 361–62.

[8] The petitioner distinguishes *Andrews* on the ground that, unlike the situation in the present case, even if counsel had recommended the plea offer at issue, the petitioner in *Andrews* would not have accepted it because he believed that the offered sentence was " 'too high . . . .' " The petitioner's argument conflates the first and second prongs of *Strickland*. Whether the petitioner would have accepted a plea offer if counsel had recommended that he do so is relevant in determining whether the lack of a recommendation prejudiced the petitioner, not whether counsel's representation was deficient.