******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom McDONALD, J., joins, concurring in the judgment. With reluctance, I agree with the majority that existing case law, both state and federal, likely compels the conclusion that the trial court's plea canvass of the defendant, David D. Roberts, complied (although just barely[1]) with the requirements of *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). My misgivings derive from my belief that the core constitutional principles animating *Boykin* have been diluted to the vanishing point—as the facts of this case illustrate. I am concerned in particular that our *Boykin* case law risks leading trial courts to be far too casual when discharging their obligation to scrupulously ensure that a defendant's decision to plead guilty is made knowingly and intelligently with respect to the critical constitutional rights being waived.

I write separately to summarize what I consider to be the doctrinal vitiation of *Boykin* that has emptied it of substance and treats its requirements as mere formalities that, if not honored by the trial judge, will be found to be satisfied through the creative efforts of an appellate court reading between the lines of a deficient plea colloquy. I make these observations for the purpose of reminding trial courts, if a reminder is needed, that the plea canvass is anything but a formalistic exercise

---

[1] I also agree with majority that the facts of the present case stand at the outer limits of compliance with *Boykin*, even in its currently diminished form. More generally, I note that my critique of the case law that over time has rendered *Boykin* largely an empty promise should not be understood as a criticism of the majority opinion, which does an admirable job holding fast to what remains of *Boykin* and highlighting the requirements of Practice Book § 39-19 (5). Indeed, I read the majority opinion to send a message to trial courts that they are well-advised to adhere to the requirements of Practice Book § 39-19 (5), which mandates in plain and unambiguous terms that a court "*shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands* . . . [t]he fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself." (Emphasis added.)

suited for perfunctory or abridged treatment. The plea canvass, properly conducted, requires great care and meticulous attention to detail on the part of the trial court, which performs a vitally important and nondelegable role designed to make certain that the defendant's waiver of rights is knowing, intelligent, and voluntary. It is hardly an innovation to insist that this judicial obligation can be fulfilled only by personally engaging the defendant in a meaningful colloquy that enumerates with particularity the most critical constitutional rights that the defendant surrenders by pleading guilty. See Practice Book § 39-19 (5); see also Fed. R. Crim. P. 11 (b).

It is difficult to overstate the seriousness of purpose that must attend the official proceeding in which a defendant enters a plea of guilty to criminal charges. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin* v. *Alabama*, supra, 395 U.S. 243–44. I consider it most unfortunate that courts, including this court, have largely honored this principle in the breach. See, e.g., *State* v. *Godek*, 182 Conn. 353, 356, 360, 438 A.2d 114 (1980) (stating that "[w]e are very much aware that the constitutional rights of a criminal defendant in taking . . . a guilty . . . plea must be scrupulously protected," but nevertheless finding no error when trial court failed to advise defendant of his right to court trial), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981); see also *State* v. *Shockley*, 188 Conn. 697, 698, 707, 453 A.2d 441 (1982) (stating that "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights," but nonetheless finding no error when trial court failed to advise defendant of his right to jury trial (internal quotation marks omitted)).[2]

I find it ironic that courts will justify the failure to enumerate the *Boykin* rights during a plea canvass on

[2] The importance of a careful and thorough plea canvass is magnified by the prevalence of plea bargaining in our criminal justice system. In 2024, 97 percent of criminal cases in Connecticut were resolved via

the ground that "*Boykin* does not require any specific canvass, or talismanic words,"[3] as if it elevates form over substance to require the trial court to spend an extra minute to specify the most important constitutional rights being waived and to pause long enough to determine that the defendant's waiver is knowing and intelligent. The values animating *Boykin* are plainly substantive in nature, and those values are eroded when the plea canvass becomes a rote exercise marked by vague, presumed, or altogether missing references to the particular rights being waived. If our admonition that trial courts must scrupulously protect a defendant's *Boykin* rights means anything, then we should require trial courts to personally review with the defendant each of the fundamental rights being waived by a guilty plea.

The present case serves as a perfect illustration of how the totality of the circumstances standard currently used to assess compliance with *Boykin*[4] fails to provide the necessary degree of scrupulous vigilance. By adhering to our precedent, the majority finds itself performing backflips and somersaults to create the appearance of

plea bargains. See Criminal Justice Policy & Planning Division, Office of Policy and Management, 2025 Analysis of Prosecutor Data: Report Pursuant to Public Act 19-59 (September, 2025) p. 11, available at https://portal.ct.gov/-/media/opm/cjppd-main/cjppd/cjresearch/prosecutor-data-analysis/2025_prosecutor_data_final.pdf (last visited April 22, 2026). Courts must exercise particular vigilance to ensure that the repetitive routine of plea proceedings does not lead to lax practices and reliance on vaguely worded references to the rights at stake.

[3] *State* v. *Roberts*, 227 Conn. App. 159, 175, 320 A.3d 989 (2024). There is extensive case law to this effect from around the country. See, e.g., *Dumont* v. *Borders*, Docket No. 2:17-cv-1423 KJN P, 2018 WL 5999629, *4 (E.D. Cal. November 15, 2018) ("[S]pecific articulation of the *Boykin* rights 'is not the sine qua non of a valid guilty plea.' *Wilkins* v. *Erickson*, 505 F.2d 761, 763 (9th Cir. 1974). Rather, if the record demonstrates that a guilty plea is knowing and voluntary, 'no particular ritual or showing on the record is required.' *United States* v. *McWilliams*, 730 F.2d 1218, 1223 (9th Cir. 1984)."); *People* v. *Tyrell*, 22 N.Y.3d 359, 365, 4 N.E.3d 346, 981 N.Y.S.2d 336 (2013) ("we have repeatedly rejected a formalistic approach to guilty pleas and have steered clear of a uniform mandatory catechism of pleading defendants in favor of broad discretions controlled by flexible standards" (internal quotation marks omitted)).

[4] The totality of the circumstances standard is described in the majority opinion.

compliance, even when confronted with a deficient plea canvass. The effort is earnest, but the strain it places on reasoned decision-making is palpable. Truth be told, the trial court's canvass in this case did not identify or explain even in the most cursory manner any of the three *Boykin* rights; nor did it create a record demonstrating that the defendant understood those unarticulated rights. To take the most obvious example, the right to confrontation is never mentioned by the trial judge in any way, directly or by implication. The defendant also was never told that he was giving up his *right* to a *jury* trial. The trial court asked the defendant only to confirm that "you do not want to take this to trial," an entirely different thing. Noting the defendant's choice to plead guilty rather than to proceed to trial did not inform the defendant that he had a *constitutional right* to a trial and thereby failed to inform him of the grave nature of his choice. I do not understand how it can satisfy *Boykin* to conclude that a defendant has been advised that he is relinquishing his *right* to a *jury* trial by a plea canvass that uses neither the word "right" nor "jury." Finally, the canvass also omitted any mention of the right against self-incrimination. Our case law nevertheless compels the majority to conclude that, "[b]y making clear to the defendant that it was his choice whether to plead guilty, the [trial] court's canvass was sufficient to inform the defendant of the effect of his waiver of his right against self-incrimination." This is a non sequitur.

I am leery of one other prominent aspect of the majority's *Boykin* analysis, namely, its reliance on the role of defense counsel in assessing the constitutional adequacy of the plea canvass. This includes the majority's use of the trial court's references to off-the-record attorney-client communications and defense counsel's negative response when the trial court asked whether either lawyer knew of a reason that the court should not accept the plea. In fairness, the majority is bound by our precedent regarding this kind of attorney involvement, and I am encouraged by its skepticism about the strength of the inferences to be drawn from these circumstances. I nonetheless

remain concerned that such considerations should play any appreciable role in the analysis.

In my view, *Boykin* should be understood as imposing on the trial judge, as the presiding judicial authority vested with the nondelegable task of deciding whether to accept a defendant's guilty plea, an independent obligation to personally ensure via direct colloquy, not hearsay or proxy, that the defendant's waiver of rights is knowing, intelligent, and voluntary. Numerous decisions of this court have indicated that a trial court is obligated to advise a defendant that, by pleading guilty, the defendant is waiving the core rights identified in *Boykin*. See, e.g., *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160 ("[u]nder *Boykin* . . . a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional rights—jury trial, confrontation and self-incrimination"), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); see also *State* v. *Carter*, 243 Conn. 392, 397–98, 703 A.2d 763 (1997) (citing cases). It trivializes *Boykin* to interpret its holding as nothing more than a formalistic record making requirement. As the majority explains, the trial court's obligation is not merely to ascertain that someone has explained the defendant's constitutional rights to him, but also "that he *understood* that explanation or the specific rights he was surrendering." (Emphasis in original.) That determination can be made by the trial court only through a personal and particularized colloquy with the defendant, not through inferences arising from a vague reference to an off-the-record discussion with defense counsel or counsel's failure to object to the plea.

Even putting aside the trial court's independent obligation to personally engage the defendant to determine whether the waiver of rights is knowing and intelligent, in my view, the majority places too much weight on defense counsel to raise doubts at the plea proceeding about the defendant's knowledge and comprehension of those rights. The role of defense counsel in negotiating and consummating a plea bargain is complicated and requires great sensitivity and skill. Cf. *Maia* v. *Commissioner of Correction*, 347 Conn. 449, 463, 298 A.3d 588

(2023) (highlighting tension between properly advising defendant on circumstances relevant to plea offer and avoiding coercing defendant into accepting or rejecting offer). Defense counsel's primary focus ordinarily will be directed toward obtaining a plea deal that serves the client's best interests and explaining to the client the strengths and weaknesses of the state's evidence, the likely uncertainties and risks faced at trial, and how the plea offer compares to the range of possible or realistic trial outcomes. The formal plea proceeding will often be the culmination of weeks or months of attorney-client discussions regarding the many and multilayered considerations that must inform the client's ultimate decision. See id. Under these circumstances, it strikes me as a highly questionable practice to rely on defense counsel to upset the apple cart in the final moments of a plea proceeding by raising *Boykin* concerns when asked by the trial judge whether the lawyers know of any reason that the plea should not be accepted by the court. See, e.g., E. Slater, Note, "A Legal and Ethical Puzzle: Defense Counsel as Quasi Witness," 85 Fordham L. Rev. 1427, 1445 (2016) (observing that defense counsel has incentive to assert that plea is knowing and voluntary and that judge may rely on defense counsel's representations during plea canvass to examine defendant less thoroughly).[5]

Returning to the particulars of the present case, the majority is generous in characterizing the plea canvass

[5] The role of the prosecutor must also be included in any discussion regarding the obligations of those present at the plea canvass. Although the trial court's legal obligations are neither discretionary nor delegable, and defense counsel's obligations are real (although complicated by competing responsibilities to the client), the prosecutor also has an independent obligation, as a minister of justice, to ensure that the process by which a conviction is obtained, whether by plea or trial, is lawful. See, e.g., *Gomez* v. *Commissioner of Correction*, 336 Conn. 168, 186–87, 243 A.3d 1163 (2020). As they relate to a proceeding involving a defendant's waiver of rights, the prosecutor's obligations are not merely abstract or ethereal. The Connecticut Prosecution Standards, promulgated by the Division of Criminal Justice, make the point clearly: "As with any waiver of a defendant's rights, the prosecutor should not hesitate to alert the court to any perceived deficiencies in the court's canvass of the defendant in order to ensure an effective waiver." Division of Criminal Justice, Connecticut Prosecution Standards (1st Ed. May,

as "skeletal . . . ." I agree with the majority that it was insufficient for the canvassing court to ask the defendant, "[d]id your attorney explain to you all the constitutional rights that you give up today because of your plea?" The inquiry begs the question because embedded within it is the very fact to be ascertained, that is, whether the defendant knows what is meant by "all the constitutional rights that you give up today . . . ." An affirmative answer to the question, as posed, tells us nothing useful. Similarly, in addition to the problems already discussed regarding the role of defense counsel, asking whether defense counsel knows of "any reason" why the court should not accept the plea, without even referencing the defendant's constitutional rights, is so vague and oblique that it cannot reflect the degree of care that a proper plea canvass requires. The trial court must "advise a defendant that his plea operates as a waiver of three fundamental constitutional rights"; *State* v. *Badgett*, supra, 200 Conn. 418; and I do not see how a court could accomplish this without directly questioning the defendant about each individual right.

What I find most vexing of all is the fact that the foregoing difficulties are so easily solved. The solution stares us in the face in the form of Practice Book § 39-19 (5), which provides crystal clear guidance as to both the substance and procedure that a trial judge must employ during a plea canvass to ascertain that the defendant's waiver of rights is knowingly and intelligently made: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . [t]he fact that he or she has the right to plead not guilty or to persist in

2023) standard 4-6.3, p. 152, available at https://portal.ct.gov/-/media/ DCJ/07202023DCJ-CT-Prosecution-Standards.pdf (last visited April 22, 2026). "[T]he prosecutor should, to the extent practicable, listen intently to the court's canvass of the defendant and seek to ensure that the record adequately reflects that the defendant's decision to waive the [right] is both knowing and voluntary." Id. This admonition is included in the section of the Connecticut Prosecution Standards relating to a prosecutor's responsibilities when a defendant waives the right to a probable cause hearing but, by its own explicit terms, applies equally to a plea canvass. See id. ("[a]s with any waiver of a defendant's rights").

that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

I agree with the majority that trial courts should enumerate the *Boykin* rights during plea canvasses and that the most sensible way to do so is to treat Practice Book § 39-19 (5) as a mandatory checklist.[6] This court itself has recognized that "[m]any problems would be avoided . . . if the court used 'not a script . . . but . . . some sort of checklist, as a prompter, so that whatever form the dialogue takes, all of the necessary lines will be delivered.'" *Oppel* v. *Lopes*, 200 Conn. 553, 561, 512 A.2d 888 (1986). This would satisfy the requirements of both *Boykin* and the rules of practice while placing minimal burden on the trial court and avoiding the inefficiency of having appellate courts scour vague and incomplete plea canvasses for strained or imagined implications.

Unfortunately, our devaluation of *Boykin* has been accompanied by a similar evisceration of the express and unequivocal requirements of Practice Book § 39-19 (5). I agree with the majority that our precedent has rendered the mandatory terms of § 39-19 (5) meaningless by approving "substantial compliance" with the rule that amounts to no compliance at all. See, e.g., *State* v. *Godek*, supra, 182 Conn. 360 ("the failure to comply with each and every requirement of [what is now Practice Book § 39-19] does not automatically require the vacating of the defendant's plea"). In my view, substantial compliance would permit minor deviations from the mandated terms of § 39-19 (5) but not the outright omission of specific information required by the express terms of the rule. See, e.g., *State* v. *Suggs*, 194 Conn.

---

[6] Using Practice Book § 39-19 (5) in this way would safeguard the defendant's core rights, just as aviation and health-care professionals have long used checklists to ensure that safety requirements are met in those professions. See generally R. Clay-Williams & L. Colligan, "Back to Basics: Checklists in Aviation and Healthcare," 24 BMJ Quality & Safety 428 (2015).

223, 227–28, 478 A.2d 1008 (1984) (approving of plea canvass that discussed defendant's right to "'face'" rather than "'confront'" his accusers). The simple truth is that this court has rewritten § 39-19 (5) by using the rubric of "substantial compliance" to empty it of substance.[7] Moreover, unlike our precedent on *Boykin*, which is a federal doctrine, our misconstruction of the express requirements of § 39-19 (5) is our own doing—which means that we can, and should, correct our error in the future.

Because existing case law has so diluted *Boykin*, and because the defendant has not raised a claim of error under Practice Book § 39-19 (5), I concur in the judgment.

---

[7]Whatever one makes of our "substantial compliance" case law, we should be able to agree that a plea canvass that ignores one or more of the enumerated rights cannot substantially comply with Practice Book § 39-19 (5). It is indisputable that the canvass in the present case made no reference whatsoever to either "the right to confront and cross-examine witnesses against him or her" or "the right not to be compelled to incriminate himself or herself." Practice Book § 39-19 (5). For this reason, had the defendant based his claim of error on § 39-19 (5), I would have found a clear violation of that provision.